Greg K. Hafif, SBN 149515
ghafif@hafif.com
Michael G. Dawson, SBN 150385
mgdawson@hafif.com
Charles E. Hill, SBN 176751
charles.hill@hafif.com
**LAW OFFICES OF HERBERT HAFIF, APC**
269 W. Bonita Avenue
Claremont, CA 91171-4784
Tel:(909) 624-1671; Facsimile:(909) 625-7772
Attorneys for Plaintiffs, JEFFERSON HILL,
TOM ROBERTS, PAUL MARSHALL,
THOMAS SCHAAL, JR, CHARLES VOGEL,
JOHN GREER, CLAIRE JANSSEN, DANIEL
HAUG, MATTHEW MONTGOMERY, JAMES
FRITCHER, SARA GORDON, DON LITTLE, JR.,
GREG WATTSON, JEFFERY DICKERSON,
RANDY ACKERMAN, and JEFF ROBERTS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SANTA ANA DIVISION

| | |
|---|---|
| JEFFERSON HILL, TOM ROBERTS, PAUL MARSHALL, THOMAS SCHAAL, JR., CHARLES VOGEL, JOHN GREER, CLAIRE JANSSEN, DANIEL HAUG, MATTHEW MONTGOMERY, JAMES FRITCHER, SARA GORDON, DON LITTLE, JR., GREG WATTSON, JEFFERY DICKERSON, RANDY ACKERMAN, and JEFF ROBERTS<br><br>Plaintiffs,<br><br>v.<br><br>OPUS CORPORATION, a Minnesota corporation; GERALD RAUENHORST 1982 IRREVOCABLE TRUST F/B/O GRANDCHILDREN; GERALD RAUENHORST 1982 IRREVOCABLE TRUST F/B/O CHILDREN; KEITH BEDNAROWSKI, an Individual; LUZ CAMPA, an Individual; MARK RAUENHORST, an Individual; and DOES 1 through 100, inclusive.<br><br>Defendants. | **CASE NO. CV10-4806 MMM (VBKx)**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br><br>Date:     October 25, 2010<br>Time:     10:00 a.m.<br>Location: Courtroom 780, 255 East Temple Street, Los Angeles, CA 90012 |

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS

Page No.

I.  FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

     A.    The Court Has Personal Jurisdiction Over The

           Parent Corporation and Defendant Opus Corporation

           and the Defendant Shareholders - the Two

           Rauenhorst Trusts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

                Substantial Activities In The Forum State . . . . . . . . . . . . . . .  7

                Alter Ego . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

                Reasonableness Determination . . . . . . . . . . . . . . . . . . . . .  16

                Agency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

     B.    The Court Has Personal Jurisdiction Over (1) The

           Two Trustees: Bednarowski and Campa and

           (2) Mark Raunhorst, President of Opus Corp. . . . . . . . . . . . .  22

                Substantial Activities In The Forum State . . . . . . . . . . . . . . .  22

                Alter Ego . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

                Agency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper

# TABLE OF AUTHORITIES

**CASES**                                                                      **Page No.**

*ADO Finance, AG v. McDonnell Douglas Corp.*, 931 F.Supp. 711, 719
(C.D.Cal.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,9,22

*Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848, 851-852
(9th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

*AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.1996) . 4, 6, 7, 8

*Arnold v. Browne*, 27 Cal.App.3d 386, 394, 103 Cal.Rptr. 775 (1972) . . . . . . . . . 22

*Boise Dodge, Inc. v. United States*, 406 F.2d 771 (9th Cir.1969) . . . . . . . . . . . . . 15

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77, 105 S.Ct.
2174, 2185, 85 L.Ed.2d 528 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 17, 20

*Calvert v. Huckins*, 875 F.Supp. 674, 678 (E.D.Cal.1995) . . . . . . . . . . . . . . . . . . . 8

*Caruth v. Int'l Psychoanalytical Ass'n.*, 59 F.3d 126, 128 (9th Cir.1995) . . . . . . . . 4

*Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir.1994) . . . . . . . . . . 20

*Corporate Investment Business Brokers v. Melcher*, 824 F.2d 786, 790
(9th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280,
1285, n. 2 (9th Cir.1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Decker Coal Co. v. Commonwealth Edison Company*, 805 F.2d 834, 841
(9th Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir.2001) . . . . . . . . . . . . . 7, 8, 9, 16, 20

*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1110-11 (9th Cir.2002) . . . . . . . . . . 6

*Duggan v. Hobbs*, 99 F.3d 307, 310 (9th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . 13

*Fed. Deposit Ins. Corp. v. British-Am. Ins. Co., Ltd.*, 828 F.2d 1439, 1442
(9th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Firstmark Capital Corp. v. Hempel Financial Corp.*, 859 F.2d 92, 94
(9th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION

1  *Harris Rutsky & Co. Insurance Services, Inc. v. Bell & Clements Ltd.*,
2  328 F.3d 1122, 1131 (9th Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
3  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408,
4  414-16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . 7
5  *Insurance Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266,
6  1270 (9th Cir.1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
7  *International Shoe Co. v. Washington*, 326 U.S. 310, 326, 66 S.Ct.
8  154, 90 L.Ed. 95 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
9  *Kemmerer v. ICI Americas Inc.*, 70 F.3d 281 (C.A. 3 1995) . . . . . . . . . . . . . . . . 13
10  *Mendes v. W.M. Lyles Co.*, Not Reported in F.Supp.2d, 2008 WL
11  171003, *11 (E.D.Cal.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
12  *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir.2007) . . . . . . . . . . . . . . . . . . . . . 4
13  *Mid-Century Ins. Co. v. Gardner* (1992) 9 Cal.App.4th 1205, 1213, fn. 3 . . . . . . . 10
14  *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v.*
15  *Louisiana Hydrolec*, 854 F.2d 1538, 1544 (9th Cir.1988) . . . . . . . . . . . . . . . . . . 11
16  *Panavision International, L.P. v. Toeppen*, 141 F.3d 1316, 1320
17  (9th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
18  *Paneno v. Centres For Academic Programmes Abroad Ltd.* (2004)
19  118 Cal.App.4th 1447, 1456 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
20  *Pena v. Valo*, 563 F.Supp. 742, 746 (D.C.Cal.1983) . . . . . . . . . . . . . . . . . . . . . 5
21  *People v. Pacific Landmark* (2005) 129 Cal.App.4th 1203, 1215 . . . . . . . . . . . . . 15
22  *Roth v. Garcia Marquez*, 942 F.2d 617, 625 (9th Cir.1991) . . . . . . . . . . . . . . . . . 20
23  *Rush v. Savchuk*, 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62
24  L.Ed.2d 516 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
25  *Sea Horse Ranch, Inc. v. Superior Court* (1994) 24 Cal.App.4th
26  446, 456 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
27  *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir.1990) . . . . . . . . . . . . . . . . . . . . 4
28  *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1200 (9thCir.1988) . . . . . . . . . 19

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document protected
on recycled paper

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION

1 | *Slottow v. American Cas. Co. Of Reading, Pennsylvania*, 10 F.3d

2 | 1355, 1360 (9th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

3 | *Smith v. Superior Court* (2006) 39 Cal.4th 77, 82 . . . . . . . . . . . . . . . . . . . . . . . 18

4 | *Transure, Inc. v. Marsh and McLennan, Inc.* 766 F.2d 1297, 1299

5 | (9th Cir.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

6 | *United States v. Bestfoods*, 524 U.S. 51, 69, 118 S.Ct. 1876, 141

7 | L.Ed.2d 43 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

8 | *U.S. v. Pelullo*, Slip Copy, 2010 WL 2629080, *12 (D.N.J., June 25, 2010) . . . . . . 14

9 | *United States v. Park*, 421 U.S. 658, 674, 95 S.Ct. 1903, 44

10 | L.Ed.2d 489 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

11 | *U.S. v. Todd*, 108 F.3d 1329, 1330 (C.A.11 (Ga.),1997) . . . . . . . . . . . . . . . . . . . 14

12 | *Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.* (2002) 99

13 | Cal.App.4th 228, 244 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 21

14 | *Wood v. Elling Corp.*, 20 Cal.3d 353, 142 Cal.Rptr. 696, 702-03 n. 9,

15 | 572 P.2d 755, 761-62 n. 9 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

16
17
18
19
20
21
22
23
24
25
26
27
28

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper.

1

## **STATUTES**                                                                 Page No.

2 **State**

3 18 U.S.C.A. § 664 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

4 18 U.S.C. § 1962 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5 California Business & Professions Code section 17200 . . . . . . . . . . . . . . . . . . . 4

6 California Civil Code § 3439.07(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

7 California Civil Procedure Code § 410.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

8 California Labor Code § 200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

9 California Labor Code § 203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

10 Employee Retirement Income Security Act of 1974 . . . . . . . . . . . . . . . . . . . 12, 13, 14

11 Federal Rule of Civil Procedure 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

12 Federal Rule of Civil Procedure 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

13

14 **Other Authorities**

15 Arizona:  ARS Section § 44-1004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

16 Minnesota:  Minn.Stat. § 513.44 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

17

18

19

20

21

22

23

24

25

26

27

28

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper.

-v-

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

1    Come now Plaintiffs JEFFERSON HILL, TOM ROBERTS, PAUL

2  MARSHALL, THOMAS SCHAAL, JR., CHARLES VOGEL, JOHN GREER,

3  CLAIRE JANSSEN, DANIEL HAUG, MATTHEW MONTGOMERY, JAMES

4  FRITCHER, SARA GORDON, DON LITTLE, JR., GREG WATTSON, JEFFERY

5  DICKERSON, RANDY ACKERMAN, and JEFF ROBERTS, and hereby submit the

6  following Opposition to Defendants OPUS CORPORATION, GERALD

7  RAUENHORST 1982 IRREVOCABLE TRUST F/B/O GRANDCHILDREN;

8  GERALD RAUENHORST 1982 IRREVOCABLE TRUST F/B/O CHILDREN;

9  KEITH BEDNAROWSKI; LUZ CAMPA; and MARK RAUENHORST's motion to

10  dismiss for lack of personal jurisdiction.

11                                 I.

12                    **FACTUAL BACKGROUND**

13    Plaintiffs' Complaint asserts 11 causes of action against six defendants

14  (collectively, the "Defendants"):

15    •    Opus Corporation (parent company to subsidiary Opus West

16          Corporation)

17    •    Gerald Rauenhorst 1982 Irrevocable Trust F/B/O Grandchildren

18    •    Gerald Rauenhorst 1982 Irrevocable Trust F/B/O Children

19    •    Keith Bednarowski, an individual

20    •    Luz Campa, an individual

21    •    Mark Rauenhorst, an individual.

22    Defendants admit to the following facts:  Plaintiffs are former employees and

23  officers of Opus West Corporation, a real estate development company headquartered

24  in Phoenix, Arizona and owned by Opus Corporation.  The two trusts own

25  substantially all of the stock of Opus Corporation.  Keith Bednarowski and Luz

26  Campa were two of the trustees of the two trusts.  Keith Bednarwoski served as a

27  director of Opus West Corporation.  Mark Rauenhorst served as a director of Opus

28  West Corporation.  The subsidiary Opus West had offices in California and

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA. 91711
Original document produced
on recycled paper.

- 1 -

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION**

1    conducted business within California and without question has "minimum contacts"

2    with California.

3         Plaintiffs' causes of action are based on alleged torts and statutory violations,

4    not contracts: fraudulent transfer, conspiracy, intentional and negligent interference

5    with contract, violation of the California Business and Professions Code, conversion,

6    intentional interference with prospective economic advantage, and RICO.  Plaintiffs

7    contend defendants embezzled $32,430,098.59 primarily of their pension funds.

8         On July 6, 2009, Opus West filed for chapter 11 bankruptcy protection in the

9    Bankruptcy Court in Dallas, Texas.  Opus West's bankruptcy case is still pending.

10   On January 25, 2010, Opus West filed in the Bankruptcy Court an adversary

11   proceeding against the same parties whom Plaintiffs later sued in this action, except

12   plaintiffs also sued an additional defendant - Mark Rauenhorst.  The adversary

13   proceeding is pending in Bankruptcy Court as Case No. 10-3013.

14        The First Amended Complaint (hereinafter "FAC") filed in the Dallas, Texas

15   adversary proceeding, plaintiffs contend is a key document in deciding the personal

16   jurisdiction issue.  Request For Judicial Notice, Exhibit "1".  In that pleading, Opus

17   West alleges that the defendants engaged in corporate misconduct, failed to follow

18   corporate formalities and ignored the fiction of Opus West's separate legal existence,

19   and blindly siphoned off tens of millions of dollars that left Opus West

20   undercapitalized and with an almost non-existent level of working capital (FAC, p.

21   3).

22        Opus West sued the defendants for the following claims:

23        (1) *piercing the corporate veil*; (2) breach of fiduciary duty as to
          President's Deals; (3) conspiracy and/or aiding or abetting breach of

24        fiduciary duty as to President's Deals; (4) breach of fiduciary duty as to
          sales to the Opus funds; (5) conspiracy and/or aiding and abetting breach

25        of fiduciary duty as to sales to the Opus funds; (6) breach of fiduciary
          duty as to sales to Opus Corporation; (7) conspiracy and/or aiding and

26        abetting breach of fiduciary duty as to sales to Opus Corporation; (8)
          breach of fiduciary duty as to sale to Chino Hills; (9) conspiracy and/or

27        aiding and abetting breach of fiduciary duty as to Sale to Chino Hills;
          (10) breach of fiduciary duty as to transfer of management company;

28        (11) conspiracy and/or aiding breach of fiduciary duty as to transfer of

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper.

- 2 -

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION

management company; (12) breach of fiduciary duty: scheme to breach fiduciary duties that would destroy Opus West and permit trusts to realize substantial tax benefits; (13) breach of fiduciary duty: scheme to breach fiduciary duties that would destroy Opus West and permit trusts to realize substantial tax benefits; (14) breach of fiduciary duty, refusal to comply with audit; (15) conspiracy and/or aiding and abetting breach of fiduciary duty, refusal to comply with audit and constructive fraudulent transfer as to present and future creditors[1]; (16) constructive fraudulent transfer as to present creditors; (17) constructive fraudulent transfer; (18) turnover ●f property; (19) conversion; (20) conspiracy to commit conversion; (21) constructive fraudulent transfer as to present and future creditors; (22) constructive fraudulent transfer as to present creditors; (23) constructive fraudulent transfer; (24) turnover; (25) tortious interference with contract; (26) constructive fraudulent transfer as to present and future creditors; (27) constructive fraudulent transfer as to present creditors; (28) constructive fraudulent transfer; (29) turnover; (30) avoidance of preferential transfers; (31) avoidance of fraudulent transfers; (32) recovery of preferential or fraudulent transfers; (33) disallowance of all claims; (34) unjust enrichment/quantum meruit; and (35) unjust enrichment/quantum meruit: excess dividends.

The reason plaintiffs listed out all of the causes of action in the Opus West First Amended Complaint filed against the defendants is not to bore the Court but that for purposes of this Opposition, the FAC is the <u>Smoking Gun</u>!

On June 29, 2010, plaintiffs filed this instant lawsuit against defendants to recover primarily pension funds embezzled by defendants. In what was supposed to be a knock-out blow, on July 12, 2010, the defendants filed an emergency motion in the Bankruptcy Court in Dallas, Texas to enjoin the plaintiffs from prosecuting the Complaint here in California because allegedly the Surviving Officer of Opus West was already pursuing the same causes of action in the Bankruptcy Court and the provisions of the Bankruptcy Plan prevented the plaintiffs from filing the lawsuit.

The Bankruptcy Court heard the motion ten days later on July 22, 2010 and on shortened notice. On July 26, 2010, the Bankruptcy Court granted in part and denied in part the defendants' motion. The Court enjoined the plaintiffs from pursuing causes of action numbers 1, 2, 3, 4, 8, and 10 in the Complaint. In spite of the defendants' first strike using the judicial system, the plaintiffs are still standing and

---

[1] Opus West's counsel repeated in error count fifteen for two causes of action: (a) conspiracy and/or aiding and abetting breach of fiduciary duty, refusal to comply with audit; and (b) constructive fraudulent transfer as to present and future creditors.

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper.

1    still have valid causes of action to pursue including several intentional torts and the

2    RICO cause of action (the Complaint's remaining causes of action are numbers (5)

3    Intentional interference with contract; (6) negligent interference with contract, (7)

4    violation of California Business & Professions Code section 17200 et seq.; (9)

5    intentional interference with prospective economic advantage; and the potent (11)

6    RICO violations under 18 U.S.C. § 1962.

7         Using the judicial system once again, and rather than filing an answer, or

8    seeking arbitration, the Defendants filed this motion to dismiss the Complaint under

9    Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction.  This is

10   supposed to be a second knock-out blow.  Plaintiffs are still waiting.  Instead of

11   causing any damage, the blow is simply rebuffed, by the substantial contacts of

12   defendants and by statements made by the subsidiary Opus West in the bankruptcy

13   case.

14                                  **II.**

15                              **ARGUMENT**

16        Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party may seek

17   dismissal of an action for lack of personal jurisdiction. Fed.R.Civ.P. 12(b). Once a

18   party seeks dismissal under Rule 12(b)(2), the plaintiff has the burden of

19   demonstrating that personal jurisdiction exists. *Menken v. Emm*, 503 F.3d 1050, 1056

20   (9th Cir.2007). Where the motion is based on written materials rather than an

21   evidentiary hearing, "the plaintiff need only make a prima facie showing of

22   jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir.1990).

23   Accordingly, the court only "inquire[s] into whether [the plaintiff's] pleadings and

24   affidavits make a prima facie showing of personal jurisdiction." *Caruth v. Int'l*

25   *Psychoanalytical Ass'n.*, 59 F.3d 126, 128 (9th Cir.1995). Although the plaintiff

26   cannot "simply rest on the bare allegation of its complaint," uncontroverted

27   allegations in the complaint must be taken as true. *AT & T v. Compagnie Bruxelles*

28   *Lambert*, 94 F.3d 586, 588 (9th Cir.1996).

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper.

- 4 -
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION

In ruling on this motion the Court has several options.  When faced with a factual dispute arising in the context of a motion to dismiss for lack of personal jurisdiction, a district court may do any of the following: (1) determine the matter on the basis of affidavits and pretrial motion hearing, (2) may wish to defer its decision until the parties have had sufficient time to pursue discovery as to jurisdictional facts and, following discovery, allow both sides to present evidence regarding jurisdictional issues at a full evidentiary hearing, or (3) may defer resolution of the jurisdictional issue until a trial on the merits. *Pena v. Valo*, 563 F.Supp. 742, 746 (D.C.Cal.1983).

Plaintiffs prefer the second option - to have a full-blown evidentiary hearing - where the defendants and Gerald Rauenhorst in particular can take the witness stand, be placed under oath, and asked point blank about the embezzlement of the plaintiffs' pension funds.  This alleged crime is important in the determination as to whether the Court has personal jurisdiction over the defendants, as will be discussed *infra.*  In light of the criminal penalties at stake, plaintiffs contend the evidentiary hearing on personal jurisdiction would cause the litigation to end rather quickly, and without further expense or ado, which is always a goal of the Court in handling case administration.  Indeed, the rules of Civil Procedure are to be "construed and administered to secure the just, speedy, and inexpensive determination of every action."  Fed.R.Civ.P. 1.  Assuming the Court held the evidentiary hearing ten days after the hearing scheduled for October 25, 2010, what could be more just, speedy or inexpensive than to end the case on that day, which is 128 days after the Complaint was filed?  Accordingly, with such a golden opportunity before it, this Court should order an immediate evidentiary hearing on the personal jurisdiction issue where plaintiffs are allowed to call the defendants and Gerald Rauenhorst as witnesses and require them to produce at the hearing their pension plan records and relevant business records.

/ / /

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper

- 5 -

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Another option is to wait until trial to decide the personal jurisdiction issue. Where the jurisdictional facts are "intertwined with the merits of the action" it is preferable that the determination of jurisdiction be made at trial. *Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1285, n. 2 (9th Cir.1977); accord *ADO Finance, AG v. McDonnell Douglas Corp.*, 931 F.Supp. 711, 719 (C.D.Cal.1996). Here, if the Court does not rule that there is personal jurisdiction, or grant an evidentiary hearing, plaintiffs contend the jurisdictional facts are so intertwined with the merits of the action that the determination of the personal jurisdiction issue should be made at the time of trial.

In the Court's determination, conflicts between the facts contained in the parties' affidavits must be resolved in plaintiffs' favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. *AT & T* at 588. For the purposes of determining personal jurisdiction, "the actions of one defendant cannot be attributed to another; instead, plaintiff must satisfy its prima facie showing with regard to each defendant. *Rush v. Savchuk*, 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1980)." *ADO Finance, AG v. McDonnell Douglas Corp.,* 931 F.Supp. 711, 714 (C.D.Cal.1996).

A federal district court may exercise personal jurisdiction over a non-resident defendant if the defendant has "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.' " *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1110-11 (9th Cir.2002) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 326, 66 S.Ct. 154, 90 L.Ed. 95 ( 1945)). A district court "may exercise either general or specific personal jurisdiction over nonresident defendants." *Fed. Deposit Ins. Corp. v. British-Am. Ins. Co., Ltd.*, 828 F.2d 1439, 1442 (9th Cir.1987).

Plaintiffs contend the Court has general personal jurisdiction over the nonresident defendants. Under general jurisdiction, the "Supreme Court has bifurcated this due process determination into two inquiries, requiring, first, that the

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper.

- 6 -

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION

1  defendant have the requisite contacts with the forum state to render it subject to the

2  forum's jurisdiction, and second, that the assertion of jurisdiction be reasonable."

3  *Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir.2001); *Burger King Corp. v.*

4  *Rudzewicz*, 471 U.S. 462, 476-77, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985).

5  Because California's long-arm jurisdictional statute is coextensive with federal due

6  process requirements, the jurisdictional analysis under state law and federal due

7  process are the same.   *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 590

8  (9th Cir.1996).  See Cal.Civ.Proc.Code § 410.10 (providing for personal jurisdiction

9  on any basis not inconsistent with the United States Constitution).  A court has

10  general jurisdiction over a nonresident defendant when that defendant's activities

11  within the forum state are "substantial" or "continuous and systematic." *Panavision*

12  *International, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.1998) (citing

13  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16, 104 S.Ct.

14  1868, 80 L.Ed.2d 404 (1984)).

15      A.    **The Court Has Personal Jurisdiction Over The Parent Corporation**

16            **and Defendant Opus Corporation and the Defendant Shareholders -**

17            **the Two Rauenhorst Trusts**

18                   **Substantial Activities In The Forum State**

19        Defendant Opus Corp. owned in 2009 a real estate project in California

20  developed by Opus West.  Dec. of Thomas Roberts, ¶ 13.  The defendants two trusts

21  presently own real estate projects in California developed by Opus West.  Dec. of

22  Thomas Roberts, ¶ 11.  Plaintiffs' causes of action arise out of the very activity that

23  was conducted or is being conducted by these defendants in California.  This is

24  enough activity to trigger personal jurisdiction.

25                         **Alter Ego**

26        The general rule is that the existence of a relationship between a parent

27  company and its subsidiaries is not sufficient to establish personal jurisdiction over

28  the parent on the basis of the subsidiaries' minimum contacts with the forum.

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper.

- 7 -

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION**

1  *Transure, Inc. v. Marsh and McLennan, Inc.* 766 F.2d 1297, 1299 (9th Cir.1985); *Doe*

2  at 925.  Without question, debtor Opus West had minimum contacts with the forum

3  state California.  Opus West had six regional offices in California, conducted

4  approximately 50 % of its business in California, and approximately 50% of its

5  employees were California residents.  Declaration of Tom Roberts, ¶ 9.  Opus West

6  was registered with the California Secretary of State's office, had an agent for service

7  of process in California, and was licensed by the California Department of Real

8  Estate.  Declaration of Paul Marshall, ¶ 10.

9       There is a well-known exception to the general rule that the court cannot have

10  jurisdiction over a parent based on the subsidiaries' minimum contacts with the

11  forum.  If the parent and subsidiary are not really separate entities, or one acts as an

12  agent of the other, the local subsidiary's contacts with the forum may be imputed to

13  the foreign parent corporation.  An alter ego or agency relationship is typified by

14  parental control of the subsidiary's internal affairs or daily operations.  *Doe* at 926.

15  Here, plaintiffs will show there was an alter ego relationship and agency relationship

16  that would trigger jurisdiction over the corporate defendant and the trusts.

17       To prove an alter ego theory, the plaintiff must make out a prima facie case "(1)

18  that there is such unity of interest and ownership that the separate personalities [of the

19  two entities] no longer exist and (2) that failure to disregard [their separate identities]

20  would result in fraud or injustice."  *Doe* at 926 (quoting *AT & T v. Compagnie*

21  *Bruxelles Lambert v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir.1996).

22       The first prong of this test has alternatively been stated as requiring a showing

23  that the parent controls the subsidiary "to such a degree as to render the latter the

24  mere instrumentality of the former."  *Doe* at 926 (quoting *Calvert v. Huckins*, 875

25  F.Supp. 674, 678 (E.D.Cal.1995).  The test for alter ego is satisfied where the record

26  indicates that the parent dictates every facet of the subsidiary's business-from broad

27  policy decisions to routine matters of day-to-day operation.  Cf. *United States v.*

28  *Bestfoods*, 524 U.S. 51, 69, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998)[Appropriate

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper.

- 8 -

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION**

parental involvement includes: monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures.] Similarly, under California law, "inadequate capitalization of a subsidiary may *alone* be a basis for holding the parent corporation liable for the acts of the subsidiary." *Doe* at 926-27 (quoting *Slottow v. American Cas. Co. of Reading, Pennsylvania*, 10 F.3d 1355, 1360 (9th Cir. 1993).

On a motion to dismiss for lack of personal jurisdiction, a court may consider declarations and discovery materials. *ADO Finance, AG v. McDonnell Douglas Corp.*, 931 F.Supp. 711, 714 (C.D.Cal.1996). Plaintiffs can demonstrate that Opus Corp. controlled every facet of the subsidiary's business - from broad policy decisions to routine matters of day-to-day operation. Declarations of Tom Roberts, John Greer, and Paul Marshall, ¶ 7. Plaintiffs can also show that the subsidiary Opus West was inadequately capitalized. Declarations of Tom Roberts and John Greer, ¶¶ 5-6 (verifying the allegations of the Complaint ¶¶ 39-41, 127-129 and adopting as their own statements the allegations contained in the FAC that was filed in adversary proceeding of Opus West bankruptcy).

If a corporation is an alter ego of an individual or another corporation, then the district court may disregard the corporate form and exercise personal jurisdiction over the other individual or entity. *ADO Finance, AG v. McDonnell Douglas Corp.*, 931 F.Supp. 711, 715 (C.D.Cal.1996). When deciding whether to hold shareholders personally liable for corporate debts, California courts look for additional circumstances such as inadequate capitalization, failure to observe corporate formalities, and asset stripping. *Id.* at 716. Under California law, when the elements of alter ego are present, the ordinary rule that treats a corporation as separate from its shareholders is disregarded, the court will deem the corporation's acts as the acts of those persons who own and control the entity, and jurisdiction over the corporation is passed through to its shareholders. *Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.* (2002) 99 Cal.App.4th 228, 244, as modified on denial of rehearing, review denied.

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper.

Under California law, the relevant considerations in determining whether a corporate veil should be pierced include: the commingling of funds and other assets; the failure to segregate funds of the individual and the corporation; the unauthorized diversion of corporate funds to other than corporate purposes; the treatment by an individual of corporate assets as his own; the failure to seek authority to issue stock or issue stock under existing authorization; the representation by an individual that he is personally liable for corporate debts; the failure to maintain adequate corporate minutes or records; the intermingling of the individual and corporate records; the ownership of all the stock by a single individual or family; the domination or control of the corporation by the stockholders; the use of a single address for the individual and the corporation; the inadequacy of the corporation's capitalization; the use of the corporation as a mere conduit for an individual's business; the concealment of the ownership of the corporation; the disregard of formalities and the failure to maintain arm's-length transactions with the corporation; and the attempts to segregate liabilities to the corporation.  *Mid-Century Ins. Co. v. Gardner* (1992) 9 Cal.App.4th 1205, 1213, fn. 3.

The FAC is chocked full of evidence to support the piercing of the corporate veil.[2]  From footnote 5 in the FAC, is the following allegation:

> "At a October 2007 meeting, Gerald Rauenhorst (patriarch of the Rauenhorst family) stated his belief that the imminent real estate downturn would be the worst in U.S. history.  Defendants thus were well aware of the distinct possibility of a sustained downtown (sic downturn) in the real estate market."

The Rauenhorst family just proceeded to suck up all of the cash out of Opus West, including plaintiffs' pension funds.  See FAC, Introduction and Complaint. Evidence

---

[2]In the Motion To Dismiss, defendants made light of plaintiffs' Biblical citations in the Complaint which plaintiffs had used in describing the morality, honesty, and business ethics of the Rauenhorst patriarch, Gerald Rauenhorst. Motion, 5:19.  Of course, plaintiffs are not using Biblical references as a basis for personal jurisdiction.  Notwithstanding, it is more than fortuitous, and similarly more than ironic, that plaintiffs were able to miraculously produce 88 pages of supporting evidence of an alter ego/agency theory of personal jurisdiction against the defendants just in time for this opposition.  It would be premature to call this fortuitous act divine intervention.

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper.

- 10 -

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

for piercing the corporate veil is contained in the introduction and paragraphs 1- 84 of the FAC.  In the FAC, Opus West even has a cause of action named "Piercing the Corporate Veil" against defendants Opus Parent, the two Trusts, Bednarowski, and Mark Rauenhorst.[3]  FAC, ¶¶ 83 - 84.

Evidence of commingling of funds and other assets can be found at paragraphs 169-173 of the FAC where defendant Opus Corp retained the Excess Dividends from Opus West.  Evidence of the inadequacy of the corporation's capitalization can be found at paragraphs 30-42 of the FAC regarding distributions made from Opus West to defendant Opus Corp. and the two defendant trusts (From 1995 to 2007, Opus West paid Opus Parent a total of $322,183,00.00 in dividends.  FAC, ¶ 30.)  The California Supreme Court has held that undercapitalization *alone* will justify piercing the corporate veil.  *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1544 (9th Cir.1988).

Evidence of the failure to maintain arm's-length transactions with the corporation can be found at paragraphs 47-54 of the FAC in a real estate arrangement called the "Presidents' Deals", at paragraphs 101-103 as to sales to Opus Corp., and at paragraphs 109-112 as to the sale of Chino Hills property.  Evidence of the failure to maintain adequate corporate minutes or records can be seen in paragraph 36 of the FAC (2008 audit identified overstated earnings and debt that was not properly characterized on the company's books).  Evidence of the domination or control of the corporation by the stockholders and in the concealment of the ownership of the corporation can be seen in footnote 2 of the FAC:

> "The Trusts recently announced that they will directly manage the remaining regional subsidiaries, eliminating Opus Parent as an intermediate subsidiary.  This announcement merely conforms the corporate structure to the reality that the Trusts have always directly controlled the regional subsidiaries."

---

[3]In the FAC, Mark Rauenhorst is not listed as a named defendant.  However, in the titles for some of the causes of action in the FAC, he is listed as a defendant.  See FAC, Count 1, 2, 4, 6, 8, 10, 12, 14, and 20.  Hence, debtor Opus West must have intended to include him as a named defendant.

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document prepared
on recycled paper

Evidence of the ownership of all the stock by a single individual or family can be found at paragraph 56 of the FAC:

> "Defendant Opus Real Estate VII, L.P. ("ORE VII") is a fund that holds investments for Gerald Rauenhorst and the Trusts, along with twenty to thirty of their wealthy friends. Through the Presidents' deals, the Trusts, Mark Rauenhorst, and Bednarowski owned investment units in ORE VII. Upon information and belief, the Trusts also own additional investment units in ORE VII. Always willing to held a friend in need, ORE VII and other funds established by Defendants stood ready to buy properties on advantageous terms when Opus West inevitably needed more cash. Deals with the Opus investment funds were referred to as 'Gerry deals,' a reference to Opus founder Gerald Rauenhorst. A 'Gerry deal' was the option of last resort for Opus West, because it was well-known the Gerald Rauenhorst and entities he controlled would give Opus West an even worse deal than the other members of the Opus family that purchased Opus West's assets in strong-armed deals. The large number of 'Gerry deals' speaks volumes about Opus West's ongoing financial distress."

Evidence of the failure to maintain adequate corporate minutes or records can be found at paragraph 21 of the FAC:

> "The Opus West board meetings also failed to follow necessary corporate formalities in numerous ways: Opus West and Opus West Construction Corporation had a common board meeting; no formal notices of board meetings were sent; there no minutes kept of the executive sessions of the board - the sessions during which virtually all decisions were made; and the board members were not given an opportunity to review the limited board minutes that Opus West recorded."

Evidence of the attempts to segregate liabilities to the corporation can be found at paragraphs 89-91 of the FAC (where the Presidents' Deals gave Opus Corp. the prized properties and left Opus West saddled with the debt for properties it no longer owned).

More importantly, plaintiffs alleged in the Complaint that the defendants violated federal law by embezzling plaintiffs' pension funds. See 18 U.S.C. § 664. This would constitute a large enough fraud or injustice that could justify finding jurisdiction under an alter ego theory.

It is a federal crime for a person to embezzle pension funds that are subject to any provision of the Employee Retirement Income Security Act of 1974. Under 18 U.S.C. § 664, the federal statute states:

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper.

- 12 -

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION

Any person who embezzles, steals, or unlawfully and willfully abstracts
or converts to his own use or to the use of another, any of the moneys,
funds, securities, premiums, credits, property, or other assets of any
employee welfare benefit plan or employee pension benefit plan, or of
any fund connected therewith, shall be fined under this title, or
imprisoned not more than five years, or both.  As used in this section, the
term "any employee welfare benefit plan or employee pension benefit
plan" means any employee benefit plan subject to any provision of title I
of the Employee Retirement Income Security Act of 1974.

The Opus West pension funds at issue in the Complaint were subject to at least
one provision of title I of ERISA.  Defendants contended in papers filed with the
bankruptcy court in Dallas, Texas, and in subsequent oral argument (where Opus
West filed Chapter 11 bankruptcy) that the employee pension plan at issue in Opus
West is allegedly classified as a "top hat" deferred compensation plan and is therefore
exempt from most of the provisions of title I of ERISA.  Request For Judicial Notice,
Ex. "3", 4:19-21.  A top-hat plan is defined in ERISA as "a plan which is unfunded
and is maintained by an employer primarily for the purpose of providing deferred
compensation for a select group of management or highly compensated employees.
29 U.S.C. 1101(a)(1)."  *Duggan v. Hobbs*, 99 F.3d 307, 310 (9th Cir.1996).

However, even if this is true and the employee pension plan is not completely
covered by ERISA provisions, a top hat plan is still subject to ERISA, Title 1, part 5,
concerning enforcement actions.  *Kemmerer v. ICI Americas Inc.*, 70 F.3d 281, 286-
87 (C.A. 3 1995) ["But despite the exemption of top hat plans from many of ERISA's
regulations, ERISA's enforcement provision clearly permits participants in top hat
plans, as well as other covered plans, to bring civil actions to enforce the substantive
provisions of the Act or to recover benefits due or otherwise enforce the terms of the
plan."]

Thus, the top hat deferred compensation plan at Opus West would be
considered by definition to be an employee pension benefit plan under 18 U.S.C. §
664 since it is subject to a single provision of title I of the Employee Retirement
Income Security Act of 1974.  Defendants admitted at oral argument in the
bankruptcy court that "Nonqualified plans, such as the pension plan [at issue here],

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION**

1  certain aspects of ERISA do apply." Request for Judicial Notice, Exh. "3", 13:19-20.

2  Furthermore, in what would be best described as a prosecutor's dream, defendants

3  admit to making five wire transfers of over $145 million in Opus West profits back to

4  Opus Corp. (and at a time, arguably, when they must have recognized plaintiffs'

5  pension fund liability)  See Request For Judicial Notice, Defendants' Answer To First

6  Amended Complaint in the Opus West Bankruptcy, Exh. "2", ¶¶ 26-27.

7      In order to prove a charge of embezzlement from employee benefit plan, the

8  government has to show that a defendant (1) embezzled, (2) funds, (3) from an

9  employee benefit plan, and (4) with a specific intent to deprive the plan of its funds.

10  18 U.S.C. § 664.  *U.S. v. Todd*, 108 F.3d 1329, 1330 (C.A.11 (Ga.) 1997).  The

11  government, or the plaintiffs, will be able to show that these five transfers would have

12  necessarily involved monies affecting the pension fund liabilities.[4]  Each violation of

13  18 U.S.C. § 664 carries a maximum punishment of five years, and each wire transfer

14  would be a separate count.  So for five wire transfers there would be five separate

15  counts, and the individual defendants could each be sent to federal prison for up to

16  twenty-five years.[5]  Defendants cannot possibly argue that they broke federal law in

17  their business dealings with Opus West and the plaintiffs and yet still followed

18  corporate formalities.  Moreover, defendants cannot argue that the second prong of

19  the alter ego theory does not apply here, i.e., the failure to disregard [their separate

20  identities] would result in both fraud and injustice.

21      Plaintiffs also contend defendants committed fraud (which is also an injustice)

22  when they fraudulently transferred plaintiffs' pension funds from Opus West to

23  themselves.  Complaint, ¶¶ 40-42, 53-55, 117-119 (which were alleged to be

24  violations of one of the three possible state's fraudulent transfer statutes depending

25

26  _____

27      [4]This federal crime, embezzling pension funds, would come within the jurisdiction of the U.S. Department of Labor's Office of Labor Racketeering (OLR), the FBI and the U.S. Department of Labor's Pension and Welfare Benefits Administration ("PWBA").  See *U.S. v. Pelullo*, Slip Copy,

28  2010 WL 2629080, *12 (D.N.J.,June 25, 2010).

      [5]"[The] ideal client is the very wealthy man in very great trouble."  John Sterling.

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper.

- 14 -

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION

1   on the choice of law analysis: California:  Cal.Civil Code § 3439.07(e), Arizona:

2   ARS Section 44-1004, and Minnesota:  Minn.Stat. § 513.44).  This is another

3   evidentiary basis to pierce the corporate veil for purposes of finding personal

4   jurisdiction.

5       Defendant Opus Corp. can be found liable for the embezzlement as well.  A

6   corporation, through the conduct of its agents and employees, may be convicted of a

7   crime, including a crime involving knowledge and willfulness. *Boise Dodge, Inc. v.*

8   *United States*, 406 F.2d 771, 772 (9th Cir.1969); see *Sea Horse Ranch, Inc. v.*

9   *Superior Court* (1994) 24 Cal.App.4th 446, 456, as modified on denial of rehearing,

10  review denied.  Officers of a corporation cannot be held liable solely by virtue of their

11  corporate title, however, they can and are held personally liable for actively

12  participating in criminal and tortious conduct. *People v. Pacific Landmark* (2005)

13  129 Cal.App.4th 1203, 1215; see *United States v. Park*, 421 U.S. 658, 674, 95 S.Ct.

14  1903, 44 L.Ed.2d 489 (1975).

15      More examples that the separate identities of the parent corporation and

16  subsidiary corporation were ignored can be provided.  Decs. of Thomas Roberts, John

17  Greer, ¶ 7; Dec. of Claire Janssen, ¶ 5.  Quoting directly from the FAC, defendants[6]:

18      "treated Opus West as their own personal chattel by routinely engaging
        in self-dealing transactions, blindly siphoning tens of millions of dollars

19      that left Opus West with almost non-existent levels of working capital,
        scheming to bankrupt Opus West to realize huge tax benefits, and

20      ignoring the fiction of Opus West's separate existence whenever the
        Rauenhorst family might actually be exposed to the risk that would have

21      accompanied actual arms-length dealings with Opus West." FAC, p. 3,
        last sentence of first paragraph.

22
        "The key to Defendants' behind-the-scenes efforts to get rich and stay

23      rich was the domination and control they exercised at all times over
        Opus West and other affiliates of the family trusts.  The instrumentalities

24      for such control were Mark Rauenhorst[7] (a beneficiary of the trusts) and

25

26  [6]The defendants listed in the FAC include all of the defendants in the present action except
    for defendant Mark Rauenhorst.  However, there are allegations made against him in the FAC, which

27  establish liability under an alter ego doctrine in this case.  See Footnote 7.

28  [7]Here, Opus West contends that defendant Mark Rauenhorst is alleged to have exercised
    dominion and control over Opus West to ensure that Opus West operated as a mere extension of the
    defendants trusts.  This establishes liability against him personally under an alter ego doctrine.

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper.

- 15 -
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION

Keith Bednarowski (a trustee for the trusts), both of whom served on the Opus West board and single-handedly dictated the company's operations. Board members served a purely 'advisory' role, understanding it was their job to sign off on whatever Mark Rauenhorst and Bednarowski wanted. Defendants relied upon Mark Rauenhorst and Bednarowski to ensure that Opus West operated as a mere extension of the trusts. The corporate fiction truly was a fiction; it was routinely and uniformly ignored whenever it suited the purposes of the trusts." FAC, p. 3, second paragraph.

More examples that Opus West was inadequately capitalized can be provided. "Defendants used their domination and control to systematically strip Opus West of almost all its cash, which was then passed up to the trusts. This had the specifically-intended effect of leaving Opus West in a constant state of financial desperation. Defendants placed Opus West in this precarious financial position so they could then exploit it, using its financial condition as an excuse to loan Opus West money at wildly inflated rates, and to engage in rampant self-dealing that enriched the trust beneficiaries, their trustees and their wealthy friends. Such self-dealing included so-called 'Presidents' deals' in which the two trusts, their trustees (Bednarowski and Luz Campa), Mark Rauenhorst, and others cherry-picked Opus West's best deals for their own benefit, forcing Opus West to fund and guarantee loans, while they pocketed the substantial profits from property sales. Defendants also created investment funds that included the trust beneficiaries and their wealthy friends as investors, enabling those funds to regularly purchase Opus West properties at times when Opus West needed the cash to survive or to meet laon covenants. As fiduciaries of Opus West, Defendants Mark Rauenhorst and Bednarowski bear the heavy burden of showing that the inside sales that they authorized satisfy the 'entire fairness' test. They cannot do so." FAC, pp. 3-4.

Furthermore, plaintiffs present the following evidence of inadequate capitalization from the FAC:

"Because of the ERP Software and the historical and projected financial reporting, Opus Parent had actual knowledge that each of the Distributions[8] left Opus West severely undercapitalized. Specifically, the ERP Software and financials showed that, after each of the Distributions, the sum of Opus West's debts exceeded all of the Debtor's assets. Accordingly, Opus West knew at the time the Distributions were made that Opus West was insolvent." FAC, p. 59, para. 154.

## Reasonableness Determination

The last inquiry in finding that general jurisdiction exists is a court must make a reasonableness determination. *Doe* at 925. Once it has been decided that a defendant purposefully established minimum contacts with a forum, "he must present

---

[8] "Distributions" included dividend distributions of $12,345,000 and charitable contributions of $22,371,000. See FAC, paras. 37 and 38.

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

a compelling case that the presence of some other considerations would render jurisdiction unreasonable" in order to defeat personal jurisdiction. *Burger King v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Courts have defined factors for determining reasonableness in a specific jurisdiction analysis.

> "We have listed the following factors to be balanced in determining reasonableness in a specific jurisdiction context: the extent of purposeful interjection, the burden on the defendant to defend the suit in the chosen forum, the extent of conflict with the sovereignty of the defendant's state, the forum state's interest in the dispute; the most efficient forum for judicial resolution of the dispute; the importance of the chosen forum to the plaintiff's interest in convenient and effective relief; and the existence of an alternative forum. *Shute*, 897 F.2d at 386; see *Insurance Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1270 (9th Cir.1981). We apply these same factors to the present general jurisdiction analysis. The burden is on the defendant to " 'present a compelling case' that the exercise of jurisdiction would, in fact, be unreasonable." *Shute*, 897 F.2d at 386 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985))." *Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848, 851-852 (9th Cir.1993).

Here, defendants bear the burden of proving unreasonableness, the second inquiry in the alter ego test. This they cannot do when the Court reviews all the factors. Defendants purposely interjected themselves into California by intentionally stealing (embezzling) the California plaintiffs' wages, which plaintiffs' earned in California, and by interfering with the employment contracts that were entered into in California. See Declarations of Paul Marshall, ¶ 7; Jefferson Hill, ¶ 6; Matthew Montgomery, ¶ 5; Greg Wattson, ¶ 5; Randy Ackerman, ¶ 5; Jeffery Dickerson, ¶ 5; Don Little, ¶ 5; and Thomas Schaal, Jr., ¶5. Defendants also owned or own real estate in California built by employees of Opus West. Dec. of Thomas Roberts, ¶¶ 11, 12, and 13. Further, defendants attended board meetings of Opus West and Opus Corp. in California. Dec. Of Tom Roberts, ¶ 8. At the board meetings, the embezzlement of the pension funds may have been discussed. Notwithstanding,

> "[ ] Ninth Circuit cases give the 'purposeful interjectment' factor no weight once it is shown that the defendant purposefully directed its activities to the forum state, see *Decker Coal Co.*, 805 F.2d at 841; *Hirsh*, 800 F.2d at 1481, and the Supreme Court does not include this factor in its list of relevant factors at all. See *Burger King*, 471 U.S. at 477, 105 S.Ct. At 2184." *Corporate Investment Business Brokers v. Melcher*, 824 F.2d 786, 790 (9th Cir.1987).

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper.

- 17 -

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION

Here, defendants went after the wages of California workers and intentionally interfered with employment contracts made in California which shows the defendants purposefully directed their activities at the forum state. The first factor favors plaintiffs.

The burden on defendants would be moderate if California were selected as the forum. Air transportation is easily accessible from Minnesota to California and modern advances in telecommunications would make litigating this case in California a slight burden. Further, defendants are already litigating a similar fraudulent transfer lawsuit in the Dallas bankruptcy court without complaint. The second factor is a wash.

Although sovereignty interests may carry significant weight when a defendant hails from a foreign country, this factor is of minimal significance with respect to state sovereignty. *Decker Coal Co. v. Commonwealth Edison Company*, 805 F.2d 834, 841 (9th Cir.1986). Potential witnesses in this case are the California plaintiffs who are all based in California, and the employees of Opus West, fifty percent of whom are based in California. Other potential witnesses are based in Arizona, including the remaining plaintiffs, and Arizona is also where Opus West was based out of. However, the Arizona plaintiffs want this case decided in California. Decs. of Thomas Roberts, Jeff Roberts, Charles Vogel, James Fritcher, Sara Gordon, Dan Haug, and Claire Janssen. Corporate records would have been maintained at the regional office in Irvine, California and at the corporate headquarters in Phoenix, Arizona. Dec. of Thomas Roberts, ¶ 14. Thus, the extent of conflict with the sovereignty of the defendants' home state of Minnesota is minimal.

The forum's state's interest in the dispute is high. California has a strong public policy in ensuring that California employees are paid their wages. *Smith v. Superior Court* (2006) 39 Cal.4th 77, 82. Payments into pension funds are considered "wages" for purposes of California Labor Code § 203. See Cal. Labor Code § 200. *Mendes v. W.M. Lyles Co.*, Not Reported in F.Supp.2d, 2008 WL

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION**

1   17 1003, *11 (E.D.Cal.2008). Furthermore, since defendants are alleged to have
2   committed intentional torts against plaintiffs, "California maintains a strong interest
3   in providing an effective means of redress for its residents [who are] tortiously
4   injured. *Sinatra v. National Enquirer, Inc.,* 854 F.2d 1 191, 1200 (9th Cir.1988).
5   Moreover, California has a vested interest in receiving taxes on the California
6   employees' unpaid wages. Hence, the fourth factor favors plaintiffs.

7         The most efficient forum for judicial resolution of the dispute is California,
8   because that is where most of the witnesses are located (8 California plaintiffs and 8
9   Arizona plaintiffs who consent to California being the forum v. 3 defendants [Mark
10  Rauenhorst, Keith Bednarowski, Luz Campa] plus company patriarch Gerald
11  Rauenhorst [a key witness] who all live in Minnesota. Defendants are very familiar
12  with the plush hotels in California and held Opus Corporation meetings here.
13  Declaration of Tom Roberts, ¶ 8. The embezzlement of plaintiffs' pension funds
14  may have been discussed at these California meetings. Furthermore, a substantial
15  part of Opus West's (approximately 50%) construction projects were in California.
16  Opus West had six regional offices in California: Sacramento, Pleasanton, San Jose ,
17  Los Angeles, Irvine, and San Diego. Approximately fifty percent of Opus West's
18  employees were in California. Declaration of Tom Roberts, ¶ 9. If any of these
19  witnesses need to be deposed, California would be the more favorable jurisdiction.

20        Moreover, plaintiffs are suing for intentional interference with contract,
21  negligent interference with contract, and intentional interference with prospective
22  economic advantage and the forum where the California plaintiff's employment
23  contracts were interfered with is California. A court sitting in the district where the
24  injury occurred and where the evidence is located ordinarily will be the most efficient
25  forum. *Decker Coal* at 841. Hence, California is the most efficient forum. This
26  factor also favors plaintiffs.

27        California should also be selected because of the plaintiffs' interest in
28  convenient and effective relief. Other alternative forums are Arizona and Minnesota.

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper.

- 19 -
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION

The Arizona plaintiffs prefer to litigate in California, so the advantages of litigating in that state are minimal as compared to California.  Minnesota is also available as a forum, but is too far removed from the evidence, the crime, the injustices, the records, the witnesses, and is not the ideal choice as discussed *supra*.

The burden is on the defendant to present a <u>compelling</u> case that the exercise of jurisdiction would, in fact, be unreasonable.  *Amoco* at 852 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985)).  A court will find reasonableness even if the factors are evenly split between the parties.  *Harris Rutsky & Co. Insurance Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir.2003).  A court will find reasonableness even if the factors slightly favor the defendant.  *Roth v. Garcia Marquez*, 942 F.2d 617, 625 (9th Cir.1991) (finding exercise of jurisdiction was reasonable even though only two reasonableness factors favored plaintiff, while three favored defendant).   Based on a totality of the factors, defendants cannot meet their burden on proving a compelling case of unreasonableness.  Since plaintiffs meet the first and second prong of the alter egotest, the court has personal jurisdiction over the Opus Corp. and trust defendants.

### Agency

The agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.  *Doe* at 928 (quoting *Chan v. Society Expeditions, Inc.,* 39 F.3d 1398, 1405 (9th Cir.1994).  "At an irreducible minimum, the general agency test requires that the agent perform some service or engage in some meaningful activity in the forum state on behalf of its principal such that it presence substitutes for presence of the principal."  *Doe* at 930.

"If a parent corporation exercises such a degree of control over its subsidiary corporation that the subsidiary can legitimately be described as only a means through

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper.

- 20 -

1  which the parent acts, or nothing more than an incorporated department of the parent,

2  the subsidiary will be deemed to be the agent of the parent in the forum state and

3  jurisdiction will extend to the parent." *Paneno v. Centres For Academic Programmes*

4  *Abroad Ltd.* (2004) 118 Cal.App.4th 1447, 1456, rehearing denied, review denied.

5  Under California law, in discussing the principal/agent theory, if the forum may assert

6  personal jurisdiction over the corporate subsidiary, the forum may extend its

7  jurisdiction to the parent if the parent exerts a sufficiently high degree of control over

8  its subsidiary to reasonably deem the subsidiary the agent of the parent under

9  traditional agency principles. *Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.* (2002) 99

10  Cal.App.4th 228, 244, as modified on denial of rehearing, review denied.

11       Using the same evidence as discussed *supra*, plaintiffs can make out a prima

12  facie case for general jurisdiction on defendant Opus Corporation and the trusts based

13  on an agency theory.  Opus Corp and the trusts exerted a sufficiently high degree of

14  control over its subsidiary, Opus West, to reasonably deem Opus West the agent of

15  Opus Corp. and the shareholders, the trusts.  Defendants Opus Corp. and the trusts

16  managed the day-to-day operations of Opus West to look for investments that the

17  parent corporation and ultimately the shareholder trusts could purchase at below

18  market rates after Opus West developed the real estate projects.  Defendants Opus

19  Corp and the trusts then extracted all the profits made from the private sales of the

20  projects to corporate insiders leaving Opus West undercapitalized.  The defendants

21  intentionally interfered with Opus West employees employment contracts.  They used

22  Opus West as a front to steal employee pension funds and then keep the monies as

23  additional profits to themselves.

24       As discussed *supra*, defendants cannot prove unreasonableness, the second

25  prong in the agency test.  Therefore, this Court has jurisdiction under an agency

26  theory over the defendants and the Court should require defendants to file an answer.

27  / / /

28  / / /

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper.

- 21 -

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION

**B.    The Court Has Personal Jurisdiction Over (1) The Two Trustees: Bednarowski and Campa and (2) Mark Raunhorst, President of Opus Corp.**

**Substantial Activities In The Forum State**

Defendants Keith Bednarowski and Mark Rauenhorst own real estate projects in California developed by Opus West. Dec. of Thomas Roberts, ¶ 12. Plaintiffs' causes of action arise out of the very activity that was conducted or is being conducted by these defendants in California. This is enough activity to trigger personal jurisdiction against these two individual defendants.

**Alter Ego**

If a corporation is an alter ego of an individual or another corporation, then the district court may disregard the corporate form and exercise personal jurisdiction over the other individual or entity. *ADO Finance, AG v. McDonnell Douglas Corp.,* 931 F.Supp. 711, 715 (C.D.Cal.1996). When deciding whether to hold shareholders personally liable for corporate debts, California courts look for additional circumstances such as inadequate capitalization, failure to observe corporate formalities, and asset stripping. *ADO Finance* at 716.

> "The California Supreme Court has stated the California law of alter ego liability as follows: Before the acts and obligations of a corporation can be legally recognized as those of a *particular person,* and vice versa, the following combination of circumstances must be made to appear: First, that the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; second, that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice. *Wood v. Elling Corp.,* 20 Cal.3d 353, 142 Cal.Rptr. 696, 702-03 n. 9, 572 P.2d 755, 761-62 n. 9 (1977) (citation omitted; emphasis in original); accord *Arnold v. Browne,* 27 Cal.App.3d 386, 394, 103 Cal.Rptr. 775 (1972)." *Firstmark Capital Corp. v. Hempel Financial Corp.,* 859 F.2d 92, 94 (9th Cir.1988).

Plaintiffs have offered evidence that the two trustees, Bednarowski and Campa, who managed the trusts that are the shareholders of Opus Corporation actively participated in the management of Opus West, committed a federal crime by

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

1  embezzling pension funds belonging to Plaintiffs, and stole all the subsidiary's profits

2  leaving Opus West undercaptilized. [From the FAC:

3      "Such self-dealing included so-called 'Presidents' deals' in which the
       two trusts, their trustees (Bednarowski and Luz Campa), Mark
4      Rauenhorst, and others cherry-picked Opus West's best deals for their
       own benefit, forcing Opus West to fund and guarantee loans, while they
5      pocketed the substantial profits from property sales." FAC, Introduction,
       p. 4.
6
7  From paragraph 22 of the FAC:

8      "The trustee of the Children's Trust, Luz Campa, also was heavily
       involved in structuring Opus West's deals so as to achieve the maximum
       tax benefits for the Trusts.  Campa had no position with Opus West, yet
9      he regularly involved himself in the minutiae of Opus West's specific
       real estate transactions.  Because the Trusts filed consolidated tax returns
10     that included all capital gains or losses incurred by their direct and
       indirect subsidiaries, the Trusts were the only entities that had a financial
11     interest in structuring Opus West's real estate transactions with potential
       tax implications in mind."]
12
13 From paragraph 51 of the FAC, there is evidence against all three individual

14 defendants:

15     "The other Presidents' deal participants (who included Trustee Luz
       Campa and Opus Parent CFO Steve Polacheck) joined in the conspiracy
16     by assisting Bednarowski and Mark Rauenhorst in their breaches of
       fiduciary duty to Opus West.  Each participant is jointly and severally
       liable for all profits received over the last six years by each and every
17     person or entity who participated in a Presidents' deal."

18 From paragraph 53 of the FAC:

19     "Because the Trusts, Gerald Rauenhorst, Bednarowski, Luz Campa, and
       Mark Rauenhorst owned investment units in the Opus funds (including
20     ORE VII), the entire Rauenhorst family enjoyed frequent opportunities
       to profit from the scheme to steal corporate opportunities from Opus
21     West.  In addition, Trustee Luz Campa and the Trusts' investment
       advisor, Adler Management, LLC, provided assistance in documenting
22     the President's deals."

23     Therefore, under an alter ego theory, plaintiffs have established jurisdiction

24 over the individuals Bednarwoski, Campa, and Rauenhorst.  As discussed *supra*,

25 these individual defendants cannot meet their burden of proving unreasonableness in

26 having California as the forum; therefore, this Court should retain personal

27 jurisdiction over the defendants.

28 / / /

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper

- 23 -
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION

**Agency**

The same evidence used to prove alter ego against the individual defendants can also be used to prove agency against the same defendants. Defendants cannot prove unreasonableness in having California as the forum; therefore, this Court should retain personal jurisdiction over the defendants.

### III.

### CONCLUSION

For the reasons set forth above, plaintiffs have demonstrated through declarations and discovery materials that jurisdiction is proper against the defendants under the substantial activities test, or under an alter ego or agency theory. Notwithstanding, plaintiffs prefer to have an evidentiary hearing on the personal jurisdiction issue. Alternatively, the Court should wait until trial to determine the issue of personal jurisdiction.

DATED: October ___, 2010    Greg K. Hafif
                            Charles E. Hill
                            LAW OFFICES OF HERBERT HAFIF


By: _Charles E Hill_____
       Charles E. Hill, Esq.
Attorneys for California Plaintiffs, JEFFERSON HILL, TOM ROBERTS, PAUL MARSHALL, THOMAS SCHAAL, JR, CHARLES VOGEL, JOHN GREER, CLAIRE JANSSEN, DANIEL HAUG, MATTHEW MONTGOMERY, JAMES FRITCHER, SARA GORDON, DON LITTLE, JR., GREG WATTSON, JEFFERY DICKERSON, RANDY ACKERMAN, and JEFF ROBERTS

Law Offices of
HERBERT HAFIF, APC
269 W. Bonita Avenue
Claremont, CA 91711
Original document produced
on recycled paper.

- 24 -

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**