DAVID F. MCDOWELL (BAR NO. 125806)
Email: DMcDowell@mofo.com
SAMANTHA P. GOODMAN (BAR NO. 197921)
Email: SGoodman@mofo.com
MORRISON & FOERSTER LLP
555 West Fifth Street
Los Angeles, California 90013-1024
Telephone: (213)892.5200
Facsimile: (213)892.5454

FAEGRE & BENSON LLP
John B. Gordon (MN Bar No. 36237)
JGordon@faegre.com
Dennis M. Ryan (MN Bar No. 161275)
DRyan@faegre.com
*Pro hac vice applications granted*
90 South 7th Street, Suite 2200
Minneapolis, MN 55402
Telephone: (612) 766-7000; Facsimile: (612) 766-1600
Attorneys for Defendants Opus Corporation,
Gerald Rauenhorst 1982 Irrevocable Trust F/B/O
Grandchildren, Gerald Rauenhorst 1982 Irrevocable Trust
F/B/O Children, Mark Rauenhorst,
Keith P. Bednarowski, Luz Campa, and Opus, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFERSON HILL, TOM ROBERTS, PAUL MARSHALL, THOMAS SCHAAL, JR., CHARLES VOGEL, JOHN GREER, CLAIRE JANSSEN, DANIEL HAUG, MATTHEW MONTGOMERY, JAMES FRITCHER, SARA GORDON, DON LITTLE, JR., GREG WATTSON, JEFFERY DICKERSON, RANDY ACKERMAN, and JEFF ROBERTS,<br><br>Plaintiffs,<br><br>v.<br><br>OPUS CORPORATION, a Minnesota corporation; GERALD RAUENHORST 1982 IRREVOCABLE TRUST F/B/O GRANDCHILDREN; GERALD RAUENHORST 1982 IRREVOCABLE TRUST F/B/O CHILDREN; KEITH BEDNAROWSKI, an Individual; LUZ CAMPA, and Individual; MARK RAUENHORST, an Individual; OPUS, L.L.C., a Minnesota limited liability company; and DOES 1 through 100, inclusive.<br><br>Defendants. | Case No. 10-cv-4806 MMM (VBKx)<br><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION UNDER RULE 12(b)(6) TO DISMISS PLAINTIFFS' RICO CLAIM (COUNT IV) AND PARTIALLY DISMISS PLAINTIFFS' STATE LAW CLAIMS (COUNTS I-III, V & VII) IN PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:  October 24, 2011<br>Time:  10:00 a.m.<br>Court: Roybal 780<br>Judge: Hon. Margaret M. Morrow |

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS ................................................................................ 2

I.   THE PARTIES ......................................................................................... 2

II.  PLAINTIFFS' CLAIMS ........................................................................ 2

III. OPUS WEST PROVIDED ERISA AND NON-ERISA BENEFIT PLANS. ............... 3

   A.   Plaintiffs Seek Deferred Compensation Due Under Five Opus West ERISA "Top Hat" Plans. ........................................................ 4

   B.   Plaintiffs Also Seek Compensation Due Under Opus West Non-ERISA Benefit Programs. ................................................... 5

ARGUMENT ...................................................................................................... 6

I.   PLAINTIFFS' STATE LAW CLAIMS (COUNTS I-III, V & VII) SHOULD BE DISMISSED TO THE EXTENT THEY SEEK BENEFITS DUE UNDER OPUS WEST'S ERISA PLANS. .................................................... 6

   A.   The Five "Top Hat" Plans Are Governed by ERISA. ........................... 6

   B.   Top Hat Plans Are Subject to ERISA Preemption, and Plaintiffs' State Law Claims Are, Therefore, Preempted. ................................. 7

      1.   Conflict Preemption Bars Plaintiffs' State Law Claims Because They Seek Recovery of ERISA Benefits, as to Which ERISA Provides the Exclusive Remedy. ............................................ 8

      2.   Express Preemption Also Bars Plaintiffs' State Law Claims Because Those Claims "Relate To" ERISA Plans. ........................ 9

II.  COUNT IV SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UNDER SECTION 1962(C) OF RICO. .................................... 12

   A.   Plaintiffs Lack Standing to Assert a RICO Claim ................................ 13

      1.   Plaintiffs Lack Standing to Assert "Bank Fraud." ........................ 15

      2.   Plaintiffs Lack Standing to Assert Mail/Wire Fraud or Embezzlement. ................................................................ 15

i

B.    Plaintiffs Fail to Allege RICO "Conduct" or "Participation." ............ 17

C.    Plaintiffs Fail to Allege a "Pattern Of Racketeering Activity." .......... 17

    1.    Plaintiffs' Alleged Predicate Acts of Bank Fraud Are Not Evidence of a RICO Pattern. .......................................................... 18

    2.    Plaintiffs Fail to Allege Mail/Wire Fraud. .................................... 19

    3.    Plaintiffs Fail to Allege Embezzlement from a Benefit Plan......... 22

III.    PLAINTIFFS FAIL TO STATE A SECTION 1962(D) CLAIM. ............... 23

CONCLUSION ............................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Aetna Health Inc. v. Davila,* 542 U.S. 200, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004) ...........................................................................................8

*Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 107 S. Ct. 2759, 97 L. Ed. 2d 121 (1987) ................................................... 17

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 1126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006) .......................................................................... 14

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 173 L. Ed. 2d 868 (2009)....................................6

*Avalos v. Baca*, 596 F.3d 583 (9th Cir. 2010).......................................... 24

*Baumer v. Pachl*, 8 F.3d 1341 (9th Cir. 1993).......................................... 24

*Beck v. Prupis*, 529 U.S. 494, 120 S. Ct. 1608, 146 L. Ed. 2d 561 (2000)............ 15

*Bell Atl. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ..............................................................................................6

*Best Deals on TV, Inc. v. Naveed*, 2007 WL 2825652 (N.D. Cal. Sept. 26, 2007) ............................................................................................ 15

*Cal. Div. of Labor Standards Enforcement v. Dillingham Constr.*, 519 U.S. 316, 117 S. Ct. 832, 116 L. Ed. 2d 791 (1997) ........................................9

*Cal. Pharm. Mgmt., LLC v. Zenith Ins. Co.*, 669 F. Supp. 2d 1152 (C.D. Cal. 2009) ...................................................................................... 19, 20

*Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083 (9th Cir. 2002) ................................... 14

*Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222 (9th Cir. 2005)........................... 7, 8

*Couch v. Cate*, 379 Fed. Appx. 560 (9th Cir. 2010)................................................. 14

*Eaves v. Designs for Finance, Inc.*, No. 09-cv-3952 (CS), 2011 WL 1236173 (S.D.N.Y. March 30, 2011) ............................................................... 23

*Eclectic Props. E., LLC v. Marcus & Millchap Co.*, 2010 WL 384736 (N.D. Cal. Jan. 29, 2010) ........................................................................ 17

iii

*FMC Corp. v. Holliday*, 498 U.S. 52, 111 S. Ct. 403, 112 L. Ed. 2d 356 (1990) .......................................................................................................... 10

*Garratt v. Knowles*, 245 F.3d 941 (7th Cir. 2001) ........................................7

*Golden Gate Rest. Ass'n v. City & County of San Francisco*, 546 F.3d 639 (9th Cir. 2008) ..........................................................................................11

*Grimmett v. Brown*, 75 F.3d 506 (9th Cir. 1996)........................................ 13

*H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989).......................................................................................... 18

*Hemi Group, LLC v. City of N.Y.*, 130 S. Ct. 983 (2010)................................. 14, 16

*Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992)............................................................................. 13, 14, 16

*Howard v. Am. Online, Inc.*, 208 F.3d 741 (9th Cir. 2000) .............................. 18, 19

*Hutchison v. Crane Plastics Mfg., Ltd.*, 2005 WL 4785611 (S.D. Ohio Sept. 28, 2005) ..........................................................................................9

*Impress Commc'ns v. Unumprovident Corp.*, 335 F. Supp. 2d 1053 (C.D. Cal. 2003) ...............................................................................................14

*In re Downey Reg'l Med. Ctr. Hosp.*, 441 B.R. 120 (B.A.P. 9th Cir. 2010) .............6

*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994) ............................... 20

*In re IT Group, Inc.*, 448 F.3d 661 (3d Cir. 2006)........................................7

*In re IT Group, Inc.*, 305 B.R. 402 (D. Del. 2004) ................................... 7, 8

*In re New Valley Corp.*, 89 F.3d 143 (3d Cir. 1996) ....................................7

*Kennar v. Kelly*, 2011 WL 2116997 (S.D. Cal. May 27, 2011) ............................ 20

*Kennedy v. Full Tilt Poker*, 2010 WL 1710006 (C.D. Cal. Apr. 26, 2010)....... 17, 20

*Lemanski v. Lenox Savings Bank*, 1996 WL 253315 (D. Mass. April, 12 1996) ..........................................................................................7, 8

*Lockett v. Marsh USA, Inc.*, 354 Fed. Appx. 984 (6th Cir. 2009)............................9

iv

*MacDonald v. Summit Orthopedics, Ltd.*, 681 F. Supp. 2d 1019 (D. Minn. 2010) ................................................................................................ 7, 12

*Makowski v. United Bhd. of Carpenters and Joiners of Am.*, 2010 WL 3026510 (S.D.N.Y. Aug. 2, 2010) ...................................................... 13

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006) ............................................ 3

*Minor v. United States*, 772 F.2d 1472 (9th Cir. 1985) ................................ 6

*Molina v. Union Independiente Autentica de la AAA*, 555 F. Supp. 2d 284 (D. P. R. 2008) ...................................................................................... 23

*Nichols v. Mahoney*, 608 F. Supp. 2d 526 (S.D.N.Y. 2009) ...................... 12

*Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101 (2d Cir. 2008) ............. 7, 11

*Pareto v. F.D.I.C.*, 139 F.3d 696 (9th Cir. 1998) .................................... 6, 23

*Paulsen v. CNF Inc.*, 559 F.3d 1061 (9th Cir. 2009) ........................... passim

*Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064 (9th Cir. 2005) .................. 11

*Peters v. Lincoln Elec. Co.*, 285 F.3d 456 (6th Cir. 2002) .......................... 9

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S. Ct. 1549, 95 L. Ed. 2d 39 (1987) ...................................................................................... 10

*PM Group Life Ins. Co. v. W. Growers Assurance Trust*, 953 F.2d 543 (9th Cir. 1992) ...................................................................................... 10

*Providence Health Plan v. McDowell*, 385 F.3d 1168 (9th Cir. 2004) .................... 11

*Reliable Home Health Care, Inc. v. Union Cent. Ins. Co.*, 295 F.3d 505 (5th Cir. 2002) ................................................................................ 7, 8, 11

*Reves v. Ernst & Young*, 507 U.S. 170, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993) ...................................................................................... 17

*Rocawear Licensing LLC v. Pacesetter Apparel Group*, 2007 WL 5289737 (C.D. Cal. Sept. 12, 2007) .............................................................. 24

*Sanford v. MemberWorks, Inc.*, 625 F.3d 550 (9th Cir. 2010) .............. 20, 21, 24

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986) ................................................................................................................. 19

*Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983) ................................................................................................................. 10

*Starr v. MGM Mirage*, 2006 WL 3290299 (D. Nev. Nov. 7, 2006) ........................... 7

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ............................................... 20

*Thomas v. Baca,* 308 Fed. Appx. 87 (9th Cir. 2009) ................................................. 13

*United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1274 (7th Cir. 1985) ....................................................................................................... 23

*United States v. Andreen*, 628 F.2d 1236 (9th Cir. 1980) ........................................ 22

*Vierria v. Cal. Highway Patrol*, 644 F. Supp. 2d 1219 (E.D. Cal. 2009) ................. 23

*Young v. W. Coast Indus. Relations Ass'n, Inc.*, 763 F. Supp. 64 (D. Del. 1991) ..................................................................................................................... 23

**FEDERAL STATUTES**

18 U.S.C. § 664 ........................................................................................................... 22

18 U.S.C. § 1961(5) ..................................................................................................... 18

18 U.S.C. § 1962 .......................................................................................................... 13

ERISA § 201(2) .............................................................................................................. 4

ERISA § 301(a)(3) .......................................................................................................... 4

ERISA § 401(a)(1) .......................................................................................................... 4

I.R.C. § 409A .................................................................................................................. 5

ERISA § 502(a) ............................................................................................................... 8

ERISA § 514(c) ............................................................................................................... 9

**REGULATIONS**

29 C.F.R. § 2520.104-23(d)(2) ...................................................................................... 6

# INTRODUCTION

Plaintiffs, former executives of Opus West Corporation, seek unpaid compensation and deferred compensation that their bankrupt former-employer owes them. As unsecured creditors, Plaintiffs will recover a portion of what they are owed in Opus West's bankruptcy. Through this action, Plaintiffs seek to elevate their claims above those of other unsecured creditors by pursuing claims against Opus West's parent corporation and related entities and persons.

Opus West has already sued and settled with these defendants for the same alleged conduct, and the bankruptcy court enjoined Plaintiffs from relitigating Opus West's claims. Plaintiffs' First Amended Complaint ("Complaint") must therefore plead causes of action that are uniquely their own. Six of the Complaint's seven counts, however, are facially deficient. More than 95 percent of Plaintiffs' alleged damages (totaling an alleged $25.5 million) are benefits due under Opus West's deferred compensation plans, which are governed by ERISA. Because ERISA preempts state law claims to recover ERISA benefits, Plaintiffs' five state law claims related to these plans fail as a matter of law. In addition, Plaintiffs fail to state a claim under RICO because they lack standing to assert such a claim, the Complaint lacks the necessary specificity, and their allegations fail to support the elements of a RICO claim.

Accordingly, Defendants move under Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiffs' state law claims (Counts I-III, V and VII), to the extent they seek benefits under the ERISA plans, and all of Plaintiffs' RICO claim (Count IV).[1]

---

[1] Granting Defendants' motion will leave Plaintiffs with only two claims remaining to be decided either on summary judgment or at trial – namely: (1) Plaintiffs' state law claims seeking compensation under Opus West's non-ERISA benefit programs (totaling an alleged $1.1 million); and (2) Plaintiffs' single ERISA claim (Count VI) (totaling an alleged $8.4 million).

1

2

### STATEMENT OF FACTS

3

**I.     The Parties**

Plaintiffs are the former top executives of Opus West[2] who ran the company until it filed for bankruptcy in July 2009.  (Complaint ¶¶ 32-34.)

Plaintiffs' claims are based on Opus West's failure to pay them compensation and deferred compensation allegedly due under ERISA and non-ERISA benefit plans sponsored by Opus West.  But Opus West is not a defendant in this action.  Rather, Defendants are:  (1) Opus West's parent and sole shareholder, Opus Corporation; (2) Opus Corporation's two shareholders, the Gerald Rauenhorst 1982 Irrevocable Trust f/b/o Grandchildren and the Gerald Rauenhorst 1982 Irrevocable Trust f/b/o Children; (3) Keith Bednarowski, a trustee of both Rauenhorst trusts and former director of both Opus West and Opus Corporation; (4) Luz Campa, a former trustee of both Rauenhorst trusts and former director of Opus Corporation; (5) Mark Rauenhorst, former president and CEO of Opus Corporation and former director of Opus West; and (6) Opus, LLC.  (*Id.* ¶¶ 21-27.)  The following organizational chart shows the relationship of these entities:



**II.    Plaintiffs' Claims**

Plaintiffs seek compensation due to them as former employees of Opus West.  (*See, e.g., id.* ¶¶ 34-35, 62, 67, 71-72, 82, 98, 111, 116-118, 126-27.)  Over 95

---

[2] One Plaintiff, Sara Gordon, was not an Opus West employee but is the former spouse of Plaintiff James Fritcher.  (Complaint ¶ 34(c).)

MEMO. OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS   Case No. 10-cv-4806 MMM (VBKx)

1

2   percent of Plaintiffs' claimed damages are for alleged benefits due under deferred

3   compensation plans, which Plaintiffs agree are governed by the Employee

4   Retirement Income Security Act of 1974 ("ERISA"). (*Id.* ¶¶ 69, 94, 97, 116-122.)

5   The Complaint alleges seven causes of action to recover benefits under the ERISA

6   plans, but only Count VI is a claim under ERISA. The remaining claims include

7   one for RICO violations (Count IV) and five state law claims, for intentional

8   interference with contract (Count I), inducing breach of contract (Count II),

9   violation of the California Business and Professions Code (Count III), unjust

10  enrichment (Count V), and declaratory relief (Count VII).

11       Plaintiffs' theory is that Defendants stripped money from Opus West, leaving

12  it undercapitalized. (*Id.* ¶ 30.) The alleged fund transfers from Opus West to Opus

13  Corporation, Plaintiffs assert, were "intentionally made . . . to cheat Plaintiffs out of

14  their compensation and deferred compensation." (*Id.* ¶ 67.) But the Complaint

15  clearly alleges that these transfers came from Opus West's general funds—not from

16  funds set aside for or otherwise belonging to Plaintiffs. (*Id.* ¶¶ 88, 94, 96.)

17  **III.    Opus West Provided ERISA and Non-ERISA Benefit Plans.**

18       As noted above, Plaintiffs concede that several of the benefit plans at issue

19  are governed by ERISA. Although Plaintiffs do not identify which benefit plans

20  are governed by ERISA and which are not, the plan documents themselves do.[3]

21

22

23  _____

24  [3] On a motion to dismiss, a court may consider evidence outside the complaint if
    the complaint "necessarily relies" on such evidence, that is, if: "(1) the complaint

25  refers to the document; (2) the document is central to the plaintiff's claim; and (3)
    no party questions the authenticity of the copy attached to the 12(b)(6) motion."

26  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Here, the Complaint refers

27  repeatedly to the Plans, and the claims therein rely on them. Thus, this Court may
    consider these plans, which accompany Defendants' Request for Judicial Notice in

28  Support of Defendants' Motion to Dismiss as Exhibits A - E.

## A.    Plaintiffs Seek Deferred Compensation Due Under Five Opus West ERISA "Top Hat" Plans.

The following table identifies the five Opus West ERISA benefit plans at issue (the "ERISA Plans") by their correct names, not the names used in the Complaint.  (Complaint ¶ 34.)

| Plan Name | Benefit Amounts Claimed[4] |
|---|---|
| Opus West Corporation SAR Plan (Ex. A) | $  15,936,786.00 |
| Opus 80/20 Plan for Officers (Ex. B) | $    2,839,739.56 |
| Opus Deferred Compensation Plan for Operating Subsidiaries ("Presidents Plan") (Ex. C) | $    5,538,105.00 |
| Opus West Corporation Incentive Compensation Plan (Ex. D) | $       777,151.48 |
| Opus West Corporation Incentive Compensation Plan for John Greer (Ex. E) | $       387,969.07 |
| **Total of Benefit Amounts Claimed** | **$  25,479,751.11**[5] |

Each of these ERISA Plans is a type of employee pension benefit plan known as a "top hat" plan.  (*Id.* ¶ 94.)  ERISA top hat plans are <u>un</u>funded plans that provide deferred compensation for select management or highly-compensated employees.  Because the ERISA Plans provide deferred compensation within the meaning of ERISA, they are not subject to ERISA's funding requirements.  ERISA §§ 201(2), 301(a)(3), and 401(a)(1).  As such, Opus West was not required to – and did not – put money in trust to fund the benefits due under the ERISA Plans.  Indeed, Opus West <u>could</u> <u>not</u> set aside funds without subjecting Plaintiffs to immediate obligations to pay income taxes on money they had not yet received.  *See* I.R.C. § 409A.  As explicitly stated in the ERISA Plans, any obligations to the

---

[4] Defendants dispute these amounts but accept them as true for this motion.

[5] Plaintiff Matthew Montgomery's claim under the Opus 80/20 Plan for Non-Officers has been settled, and is not discussed herein.

1

2 Plaintiffs are unsecured obligations of Opus West payable only from its general

3 corporate assets. (Ex. A §§ 1.4, 4.2; Ex. B §§ 1.5, 4.4; Ex. C §§ 1.7, 5.2; Ex. D §§

4 1.4, 4.4; Ex. E §§ 1.4, 4.4.)

5        The ERISA Plans provided for deferred compensation based on Opus West's

6 financial performance, each Plan using its own compensation formula and vesting

7 schedule. (*See* Exs. A-E.)  Generally, the ERISA Plans granted participants annual

8 awards based on Opus West's financial performance.  (*Id.*)

9    **B.    Plaintiffs Also Seek Compensation Due Under Opus West Non-ERISA Benefit Programs.**

10       Plaintiffs' remaining claims for compensation (as opposed to <u>deferred</u>

11 compensation) arise from Opus West's bonus and incentive benefit programs (the

12 "Benefit Programs").  These programs are not governed by ERISA.  The following

13 table identifies the seven Benefit Programs at issue (as identified in the Complaint).

14 (Complaint ¶ 34.)

15

| Name of Program | Benefit Amounts Claimed[6] |
|---|---|
| 2008 Bonus | $      23,425.00 |
| 2008 Bonus Incentive | $      44,450.00 |
| 2008 Incentive | $    336,936.20 |
| Opus Corp. Annual | $    431,458.00 |
| Opus Core Annual | $      15,000.00 |
| 2008 guaranteed bonus | $        4,768.77 |
| 2009 guaranteed salary | $    200,000.00 |
| **Total of Benefit Amount Claimed** | **$  1,056,037.97** |

---

[6] Defendants disagree that Plaintiffs were owed these amounts under the Benefit Programs, but accept the allegations as true for purposes of this motion.

**ARGUMENT**

Plaintiffs' Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) because it does not contain sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A plaintiff must show more than a "sheer possibility" of success on the merits. *Iqbal*, 129 S. Ct. at 1949. Although a court must accept a complaint's well-pleaded facts as true, "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* Moreover, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

I.    **PLAINTIFFS' STATE LAW CLAIMS (COUNTS I-III, V & VII) SHOULD BE DISMISSED TO THE EXTENT THEY SEEK BENEFITS DUE UNDER OPUS WEST'S ERISA PLANS.**

A.    **The Five "Top Hat" Plans Are Governed by ERISA.**

As noted above, Plaintiffs appropriately concede that the five deferred compensation plans at issue are "top hat" plans governed by ERISA. (Complaint ¶ 94.) Plaintiffs also admit that an ERISA top hat plan is <u>unfunded</u> (*id.*) – that is, plan benefits are payable from the employer's general funds. 29 C.F.R. § 2520.104-23(d)(2) (benefits are paid either directly from employer's general assets or by insurance purchased with general assets); *see In re Downey Reg'l Med. Ctr. Hosp.*, 441 B.R. 120, 130 n.7 (B.A.P. 9th Cir. 2010). Thus, Opus West was required to pay benefits under the ERISA Plans only with assets that are subject to claims of general creditors. *Minor v. United States*, 772 F.2d 1472, 1475 (9th Cir. 1985); *In re Downey Reg'l Med. Ctr. Hosp.*, 441 B.R. at 130 n.7. Further, the parties agree that top hat plans are exempt from various requirements that affect

6

1

2    other ERISA employee benefit plans, but (as discussed below) remain subject to

3    ERISA's enforcement and preemption provisions.  (Complaint ¶ 119.)

4

5    **B.    Top Hat Plans Are Subject to ERISA Preemption, and Plaintiffs'**

6    **State Law Claims Are, Therefore, Preempted.**

7        Top hat plans, like any other ERISA plan, are subject to preemption.  As the

8    Second Circuit has noted, ERISA preempts state law claims related to "every plan

9    covered by ERISA, which necessarily includes top hat plans."  *Paneccasio v.*

10   *Unisource Worldwide, Inc.*, 532 F.3d 101, 113 (2d Cir. 2008); *see also In re IT*

11   *Group, Inc.*, 448 F.3d 661, 664-65 (3d Cir. 2006); *In re New Valley Corp.*, 89 F.3d

12   143, 148-49 (3d Cir. 1996); *Reliable Home Health Care, Inc. v. Union Cent. Ins.*

13   *Co.*, 295 F.3d 505, 515-16 (5th Cir. 2002); *Garratt v. Knowles*, 245 F.3d 941, 948

14   (7th Cir. 2001); *MacDonald v. Summit Orthopedics, Ltd.*, 681 F. Supp. 2d 1019 (D.

15   Minn. 2010) (dismissing state law fiduciary duty claim for recovery of top hat

16   benefits based on preemption where officers of bankrupt company were accused of

17   transferring funds to related entities and overpaying themselves); *In re IT Group,*

18   *Inc.*, 305 B.R. 402, 414 (D. Del. 2004), *aff'd*, 323 B.R. 578 (D. Del. 2005); *Starr v.*

19   *MGM Mirage*, 2006 WL 3290299, at *3 (D. Nev. Nov. 7, 2006); *Lemanski v. Lenox*

20   *Savings Bank*, 1996 WL 253315, at *13 (D. Mass. April, 12 1996).

21       The Ninth Circuit applies a two-prong analysis to determine when

22   preemption is appropriate.  *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1081 (9th Cir.

23   2009), *cert. denied*, 130 S. Ct. 1053 (2010).  If a state law claim fits within either

24   prong, it is preempted.  *Id.*  The two prongs are (1) conflict preemption, as required

25   by ERISA's exclusive scheme of remedies set forth in § 502(a), and (2) express

26   preemption under § 514 (a).  *Id.*; *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222,

27   1225 (9th Cir. 2005).  Both are met here.

28

### 1. Conflict Preemption Bars Plaintiffs' State Law Claims Because They Seek Recovery of ERISA Benefits, as to Which ERISA Provides the Exclusive Remedy.

ERISA provides a comprehensive and exclusive framework of remedies for enforcement of its provisions. ERISA § 502(a); *Paulsen*, 559 F. 3d at 1084 (citing *Cleghorn*, 408 F.3d at 1225). As a result, any state law claim that "would fall within the scope of this scheme of remedies is preempted as conflicting with the intended exclusivity of the ERISA remedial scheme." *Paulsen*, 559 F. 3d at 1084. These claims are preempted even if they are not expressly preempted by ERISA § 514(a). *Id.* (citing *Cleghorn*, 408 F.3d at 1225); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 n.4, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004).

ERISA's exclusive enforcement provision "outlines a participant's possible claims, which include '(1) an action to recover benefits due under the plan, ERISA § 502(a)(1)(B); (2) an action for breach of fiduciary duties, ERISA § 502(a)(2); and (3) a suit to enjoin violations of ERISA or the Plan, or to obtain other equitable relief.'" *Paulsen*, 559 F. 3d at 1084 (quoting *Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1008 (9th Cir. 1998)). If an employee's claim can be characterized as a claim "to recover benefits due . . . under the terms of the plan" as allowed by ERISA § 502(a)(1)(B), "then the claim would likely be conflict preempted because ERISA would provide both a cause of action and an enforcement remedy." *Id.*; *Cleghorn*, 408 F.3d at 1226 (claims preempted where, as here, "the factual basis of the complaint . . . was the denial of reimbursement of plan benefits").

These principles mandate preemption of each of Plaintiffs' state law claims to the extent they seek to recover benefits allegedly due under the top hat plans, because the Plans are governed by ERISA. Indeed, each state law claim relates to an ERISA Plan, and courts routinely hold that such claims are preempted. *Paulsen*, 559 F.3d at 1084; *Reliable Home Health Care*, 295 F.3d at 515-16; *In re IT Group, Inc.*, 305 B.R. at 414; *Lemanski*, 1996 WL 253315, at *13; *Peters v. Lincoln Elec.*

*Co.*, 285 F.3d 456, 469 (6th Cir. 2002) (noting that where "in essence . . . a claim is for the recovery of an ERISA plan benefit," conflict preemption applies); *Lockett v. Marsh USA, Inc.*, 354 Fed. Appx. 984, 988-89 (6th Cir. 2009) (claim for severance benefits was "a claim to recover benefits due under the terms of the Plan" and was therefore preempted); *Hutchison v. Crane Plastics Mfg., Ltd.*, 2005 WL 4785611, at *4 (S.D. Ohio Sept. 28, 2005) ("Because ERISA completely preempts state law claims that fall within the civil enforcement provision of ERISA, actions involving benefits payable from top hat plans are preempted by ERISA.") (citation omitted).

Plaintiffs' ERISA claim (Count VI) shows that Plaintiffs understand that claims for benefits are properly brought under ERISA. Plaintiffs frame this claim as one seeking benefits under two of the ERISA Plans and as brought against Opus Corporation and Opus LLC. (Complaint ¶¶ 116-122.) Plaintiffs' attempt to use state law claims to recover benefits due under the ERISA Plans is patently improper, and should be rejected on the grounds of conflict preemption.

### 2. Express Preemption Also Bars Plaintiffs' State Law Claims Because Those Claims "Relate To" ERISA Plans.

Because Plaintiffs' state law claims are preempted under conflict preemption principles, this Court need go no further in its preemption analysis. This is because a state law claim need only meet one prong of the Ninth Circuit's preemption test to fail on the grounds of ERISA preemption. *Paulsen*, 559 F.3d at 1085. Nonetheless, as explained below, Plaintiffs' state law claims also fail the express preemption prong of the test.

ERISA's express preemption provision preempts "any and all state laws" that "relate to" an employee benefit plan. ERISA § 514(a). "State law" is broadly defined to include both state statutory law and state common law. ERISA § 514(c).

ERISA's remedies "supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. ERISA § 514(a). This preemption clause is "conspicuous for its breadth." *Cal. Div. of Labor*

9

*Standards Enforcement v. Dillingham Constr.*, 519 U.S. 316, 324, 117 S. Ct. 832, 116 L. Ed. 2d 791 (1997); *see FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S. Ct. 403, 112 L. Ed. 2d 356 (1990). Indeed, the Supreme Court has held that the term "relates to" should be given its "broad common- sense meaning." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S. Ct. 1549, 95 L. Ed. 2d 39 (1987); *see PM Group Life Ins. Co. v. W. Growers Assurance Trust*, 953 F.2d 543, 545 (9th Cir. 1992) ("ERISA contains one of the broadest preemption clauses ever enacted by Congress.").

The Ninth Circuit has set out a two-part inquiry to determine whether a claim "relates to" a plan: a claim is preempted if it <u>either</u> has (a) a "connection with" <u>or</u> (b) a "reference to" the plan. *Paulsen*, 559 F.3d at 1082 (citing *Cal. Div. of Labor Standards Enforcement*, 519 U.S. at 324; *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990)); *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 96-97, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983). Importantly, only <u>one</u> part of this test – <u>either</u> the "in connection with" prong <u>or</u> the "in reference to" prong – must be met before a state law claim will be held to be preempted under express preemption. The following chart illustrates the relationship between these sources of ERISA preemption:



Here, Plaintiffs' state law claims meet the first part of the express preemption test in that each makes "reference to" Opus West's ERISA Plans. As such, they are expressly preempted.

A law or claim "refers to" a plan if it (1) "acts immediately and exclusively upon ERISA plans," or (2) "the existence of ERISA plans is essential" to the law's operation or claim's survival. *Paulsen*, 559 F. 3d at 1082; *see Golden Gate Rest.*

10

1

2    *Ass'n v. City & County of San Francisco*, 546 F.3d 639, 657 (9th Cir. 2008), *cert.*

3    *denied*, 130 S. Ct. 3497 (2010) (quoting *Cal. Div. of Labor Standards Enforcement*,

4    519 U.S. at 325); *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th

5    Cir. 2004).  A claim is premised on the plan or is dependent on it for survival if the

6    claim requires interpretation of the plan, any distribution of benefits, or any dispute

7    about benefits previously paid.  *Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1069

8    (9th Cir. 2005); *Providence Health Plan*, 385 F.3d at 1172; *Reliable Home Health*

9    *Care*, 295 F.3d at 515-16.

10           To the extent they seek "deferred compensation" allegedly due under Opus

11   West's ERISA Plans – thereby requiring an analysis of those plans – Plaintiffs'

12   state law claims are expressly preempted.  Indeed, Plaintiffs' central allegations are

13   (1) that they are owed "compensation" and "deferred compensation," (Complaint ¶

14   34), (2) that the deferred compensation plans are top hat funds (*id.* ¶ 94), and (3)

15   that the top hat funds "were created, classified and considered as pension funds . . .

16   and were subject to provisions of title I of [ERISA]." (*Id.*)  Adjudication of these

17   claims requires an analysis of each ERISA Plan and such Plan's application to each

18   Plaintiff.  (*Id.* ¶ 34 (detailing each Plaintiff's claim for deferred compensation due

19   under Opus West's ERISA Plans).)

20           Because the Court must look to the ERISA Plans themselves to resolve these

21   state law claims, ERISA preempts them.  The validity of these claims depends on:

22   (1) whether each Plaintiff is eligible for benefits under each particular ERISA Plan,

23   (2) whether the benefits each Plaintiff seeks are vested under the Plan, (3) the

24   amount of benefits which each participant is owed under each such ERISA Plan,

25   and (4) which entity is liable to pay any such amounts.  *See Paneccasio*, 532 F.3d at

26   114.  Applying these factors, the *Paneccasio* court dismissed as preempted state

27   law claims premised on the termination of a top hat plan (and the resulting denial of

28   plan benefits), because they all related to the plan by explicit reference and required

     "reference to the Plan in the calculation of any recovery." *Id.*; *see also MacDonald*,

681 F. Supp. 2d at 1019 (dismissing state law fiduciary duty claim for recovery of top hat benefits where officers of bankrupt company were accused of depleting funds via transfers to related entities and self-overpayment because without the plan plaintiffs would not be entitled to payment). The same is true here. Indeed, Plaintiffs' ERISA claim (Count VI) pleads each of these four elements, indicating that an examination of the relevant ERISA Plans will be critical to determining what benefits (if any) Plaintiffs are entitled to under them. (Complaint ¶¶ 34, 118, 119.) Likewise, all of the Plaintiffs' state law claims relate to all five Opus West ERISA Plans and are preempted by ERISA because they all require reference to those Plans.

Because Plaintiffs' state law claims (Counts I-III, V and VII) are clearly preempted under the conflict preemption prong and the "reference to" prong of express preemption to the extent they seek deferred compensation under Opus West's ERISA Plans, they should be dismissed as a matter of law.[7]

## II.   COUNT IV SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UNDER SECTION 1962(c) OF RICO.

Civil RICO cases are particularly appropriate for dismissal because they have "vast implications for the defendants because of the specter of treble damages and the possibility of permanent reputational injury to defendants from the allegation that they are 'racketeers.'" *Nichols v. Mahoney*, 608 F. Supp. 2d 526, 536 (S.D.N.Y. 2009). Courts have "frequently commented on the 'in terrorem' settlement value that a threat of a civil RICO claim creates." *Id.* Thus, because "the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on

---

[7] Because Plaintiffs' state law claims meet these two prongs of the Ninth Circuit's ERISA preemption analysis, it is unnecessary to address the "connection with" prong of express preemption in this memorandum. For this same reason, any attempt by Plaintiffs to argue their state law claims avoid preemption because of the "connection with" prong would be unavailing.

… defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Makowski v. United Bhd. of Carpenters and Joiners of Am.*, 2010 WL 3026510, at *5 (S.D.N.Y. Aug. 2, 2010).

Plaintiffs purport to assert a claim under Section 1962(c) of RICO. (Complaint p. 23.)  Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise … to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962.  To state a claim under § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to the plaintiff's business or property. *Grimmett v. Brown,* 75 F.3d 506, 510 (9th Cir. 1996).  Plaintiffs' allegations fail to satisfy § 1962(c) for myriad reasons, including lack of standing, failure to allege conduct or participation in a RICO enterprise, and failure to allege a pattern of racketeering activity.

### A.    Plaintiffs Lack Standing to Assert a RICO Claim.

To have standing to sue under § 1962(c), civil litigants must show that:  (1) they suffered an injury to their business or property; and (2) their harm was "by reason of" the RICO violation, which requires proximate causation. *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992).  Plaintiffs cannot show either.

First, because Plaintiffs participated in <u>un</u>funded benefit plans, any purported injury would be to an expectancy interest, which is not sufficient under the law to confer standing.  And, second, Plaintiffs were not directly harmed and, thus, cannot establish proximate causation.  Even if they were injured, their loss was caused by the collapse of Opus West, not any purported RICO predicate acts.

To create standing, injury to business or property must be a "concrete financial loss, and not mere injury to a valuable intangible property interest." *Thomas v. Baca*, 308 Fed. Appx. 87, 88 (9th Cir. 2009) (internal quotations

omitted).  Injury to "mere expectancy interests … [are also] not sufficient to confer RICO standing." *Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1087 (9th Cir. 2002) (rejecting RICO claim by buyers of baseball trading cards who alleged that the random inclusion of limited edition cards constituted unlawful gambling in violation of RICO because they received the benefit of the bargain and "[t]heir disappointment upon not finding an insert card … is not an injury to property"); *see also Impress Commc'ns v. Unumprovident Corp.*, 335 F. Supp. 2d 1053, 1064 (C.D. Cal. 2003) (alleged fraudulent inducement to pay premiums for disability insurance did not state a claim for deprivation of property because "[b]y definition, an insurance policy promises certain benefits in the event of specified contingencies," and without such contingencies, "there can be no injury").

Second, for RICO standing, a plaintiff must show that a RICO predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well." *Holmes*, 503 U.S. at 268.  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led <u>directly</u> to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461, 1126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006) (emphasis added); *see Hemi Group, LLC v. City of N.Y.*, 130 S. Ct. 983, 994 (2010).  Generally, proximate cause under RICO does not "go beyond the first step" of the causal chain. *Holmes*, 503 U.S. at 271.  Claims based upon harm "flowing merely from the misfortunes visited upon a third person" are "too remote." *Id.* at 268-69. Likewise, RICO liability is "definitively foreclosed … for consequences that are only foreseeable without some direct relationship." *Couch v. Cate*, 379 Fed. Appx. 560, 566 (9th Cir. 2010) (citing *Hemi Group*, 130 S. Ct. at 991).  "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Hemi Group*, 130 S. Ct. at 989 (quoting *Holmes*, 503 U.S. at 271.)

1

2   ### 1.   Plaintiffs Lack Standing to Assert "Bank Fraud."

3   Plaintiffs lack standing to assert a RICO claim based on the so-called "bank

4   fraud" statutes (18 U.S.C. §§ 1014 and 1344) for two reasons. First, 18 U.S.C. §

5   1014 is not included in 18 U.S.C. §1961(1)'s enumerated list of predicate acts of

6   racketeering and, thus, cannot constitute a predicate offense under RICO, no matter

7   how similar it may be to any specified offense. *See Beck v. Prupis*, 529 U.S. 494,

8   497 n.2, 120 S. Ct. 1608, 146 L. Ed. 2d 561 (2000). Second, although 18 U.S.C. §

9   1344 is an enumerated predicate act, "[o]nly financial institutions have standing to

10   allege violations of bank fraud under 18 U.S.C. § 1344 as predicate acts for RICO

11   purposes." *Best Deals on TV, Inc. v. Naveed*, 2007 WL 2825652, *10 (N.D. Cal.

12   Sept. 26, 2007).

13   ### 2.   Plaintiffs Lack Standing to Assert Mail/Wire Fraud or Embezzlement.

14

15   The crux of Plaintiffs' mail/wire fraud and embezzlement averments is that

16   Defendants' transfers of funds and distributions from Opus West to Opus Corp.

17   "cheated and injured ... Plaintiffs [] out of their pension funds." (Complaint ¶ 99.)[8]

18   As a matter of law, these alleged acts could not have caused Plaintiffs to suffer a

19   concrete financial loss because, as they admit, the plans were unfunded (*id.* ¶ 94);

20   thus, their interest in Plan benefits was a mere expectancy interest, not a

21   guaranteed, concrete sum. By participating in unfunded benefit plans, Plaintiffs

22   were promised the chance to obtain deferred compensation—a chance that would

23   materialize only if Opus West had sufficient general assets to pay such

24   ───────────────

25   [8] Plaintiffs also allege mail and wire fraud based on Defendants' wiring money into Opus West to make it appear as though Opus West complied with its loan

26   covenants, and mailing purportedly fraudulent compliance reports to Opus West's

27   lenders. <u>Even if</u> such actions constituted fraud, such efforts purportedly resulted in Defendants "leaving the Banks holding millions in unpaid loans." (Complaint ¶ 97,

28   p. 27.) Thus, any alleged loss suffered was by the banks, not Plaintiffs.

1
2    compensation. As in *Chaset*, Plaintiffs took a gamble that Opus West would be
3    solvent when the time came for such deferred compensation to be paid. But, as this
4    Court discussed in *Impress Commc'ns*, the specific contingency that would have
5    given rise to Plaintiffs' entitlement to deferred compensation—Opus West's
6    solvency—was not satisfied.
7         Likewise, even if Plaintiffs had suffered a concrete financial loss, such a loss
8    would have been caused by the collapse of Opus West, and would be too remote for
9    proximate causation. *See Holmes,* 503 U.S. at 268-69. As Plaintiffs themselves
10   allege, "[b]y reason of these predicate acts, [Opus West] was left severely
11   undercapitalized and highly leveraged and thus destined to fail especially in a
12   declining economy ... [and] these acts interfered with the Plaintiffs' deferred
13   compensation contracts." (Complaint ¶ 97, p. 28.) Thus, they allege that their loss
14   was caused by Opus West's failure, which in turn was caused by its lack of assets,
15   which in turn was purportedly caused by Opus West's transfers to Opus Corp. (the
16   last of which, according to Plaintiffs, occurred on March 20, 2008, more than a year
17   before Opus West's July 6, 2009, bankruptcy). (*Id.* ¶¶ 30, 97.) To find that these
18   allegations suffice to show a direct causal chain between the transfers and
19   Plaintiffs' purported loss would require this Court to ignore established precedent
20   and go two steps beyond the direct causal chain. *See Holmes*, 503 U.S. at 271.[9]
21        In sum, Plaintiffs lack standing to assert RICO claims. Although the Court's
22   inquiry could end here, Defendants are also entitled to dismissal because Plaintiffs
23   have not alleged the other elements of a RICO § 1962(c) claim.
24

25   [9] Furthermore, even if it were foreseeable that the transfers from Opus West to
26   Opus Corp. might eventually cause Opus West to file for bankruptcy, which, in
     turn, could cause Opus West's inability to pay Plaintiffs their deferred
27   compensation, mere foreseeability is not sufficient to create proximate causation.
28   *Hemi Group*, 130 S. Ct. at 991.

**B.     Plaintiffs Fail to Allege RICO "Conduct" or "Participation."**

The Supreme Court has explicitly held that "'to conduct or participate … in the conduct of [the] enterprise's affairs,' § 1962(c), one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993) (internal citation omitted).  Even if Plaintiffs had adequately pled the existence of an enterprise, they still have not pled that each of the Defendants had a part in "directing [the enterprise's] affairs." *Id.* at 179.  Instead, Plaintiffs state only that: "Defendant persons managed, operated and manipulated the enterprise of" Opus West (Complaint ¶ 95); the predicate acts were "committed by the person Defendants [sic] through the [Opus West] enterprise" (*id.* ¶ 97, p. 24); and the allegedly fraudulent transfers were "[a]t Defendants' direction." (*Id.* p. 25.)

Plaintiffs have utterly failed to "allege facts demonstrating that each defendant conducted or participated in the conduct of the enterprise's affairs." *Eclectic Props. E., LLC v. Marcus & Millchap Co.*, 2010 WL 384736, at *4 (N.D. Cal. Jan. 29, 2010).  Simply "pleading the legal conclusion that each defendant participates in and controls [the alleged enterprise]," without offering "factual allegations that suggest direct involvement by any defendant in the alleged enterprise," will not suffice. *Kennedy v. Full Tilt Poker*, 2010 WL 1710006, at *8 (C.D. Cal. Apr. 26, 2010).  Just as in *Kennedy*, Plaintiffs have not described each Defendant's wrongdoing, and their RICO § 1962(c) claim should be dismissed.

**C.     Plaintiffs Fail to Allege a "Pattern Of Racketeering Activity."**

Plaintiffs' RICO claim likewise fails because they have not alleged a "pattern of racketeering," which is "the heart of any RICO complaint." *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 154, 107 S. Ct. 2759, 97 L. Ed. 2d 121 (1987).  A RICO "pattern" is defined as "at least two acts of racketeering activity" within 10 years of one another. 18 U.S.C. § 1961(5).  "Racketeering activity" is any act that is indictable under 18 U.S.C. § 1961(1), including bank

17

1

2    fraud, mail or wire fraud, and theft or embezzlement from an employee benefit

3    plan. "'[T]he term "pattern" itself requires the showing of a relationship' between

4    the predicates and of 'the threat of continuing activity.'" *H.J., Inc. v. Nw. Bell Tel.*

5    *Co.*, 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989) (internal

6    citations omitted). Related conduct "embraces criminal acts that have the same or

7    similar purposes, results, participants, victims, or methods of commission, or

8    otherwise are interrelated by distinguishing characteristics and are not isolated

9    events." *Id.* at 240. Importantly, "acts that share only the same participants are

10   insufficient to establish relatedness." *Howard v. Am. Online, Inc.*, 208 F.3d 741,

11   749 (9th Cir. 2000).

12        Plaintiffs allege that Defendants' pattern of racketeering activity consisted of

13   "bank fraud" in violation of 18 U.S.C. §§ 1344 and 1014, mail and wire fraud in

14   violation of 18 U.S.C. §§ 1341 and 1343, and theft or embezzlement from an

15   employee benefit plan in violation of 18 U.S.C. § 664.[10] Defendants' alleged

16   actions cannot violate these statutes as a matter of law, so Plaintiffs have failed to

17   allege a pattern of racketeering activity. *See id.* at 748 ("[c]iting acts as a part of a

18   RICO pattern, without proving that they are indictable is not sufficient").

19          **1.**    **Plaintiffs' Alleged Predicate Acts of Bank Fraud Are Not**
20                   **Evidence of a RICO Pattern.**

21        Even if Plaintiffs did have standing to assert "bank fraud," bank fraud still

22   could not support their RICO claim because it is unrelated to the other alleged

23   predicate acts. The most that Plaintiffs allege is that the participants in the alleged

24   "bank fraud" were the same as the participants in the alleged mail/wire fraud and

25   embezzlement. This is insufficient to establish relatedness to the alleged RICO

26   pattern, as the "bank fraud" allegation is different from the mail/wire fraud and

27

28

---

[10] As discussed, a violation of 18 U.S.C. § 1014 is not a predicate act for RICO purposes. Therefore, this section of the brief addresses only 18 U.S.C. § 1344.

embezzlement averments in all other respects. *Id.* at 749. Notably, any purported victims of the alleged "bank fraud" would be the financial institutions. (*See* Complaint ¶ 97, pp. 24-27 (alleging Defendants engaged in fraud "with it's [sic] lender," that they misrepresented loan compliance "to the banks," and that they left "the Banks holding millions in unpaid loans").) In comparison, Plaintiffs allege that the wire transfers giving rise to Plaintiffs' wire fraud and embezzlement claims "cheated and injured approximately ninety-two Opus West employees, including the sixteen named Plaintiffs." (*See id.* ¶ 97, p. 28; ¶ 99.) Thus the victims of the alleged predicate acts differ.

Similarly, one must conclude based on Plaintiffs' paltry and conclusory allegations that the Defendants' purpose/result in engaging in the purported "bank fraud" was to maintain compliance with certain loan covenants to avoid defaulting on various loan agreements, whereas the alleged purpose/result in engaging in wire/mail fraud and embezzlement was to "cheat[] and injure[] ... Plaintiffs [] out of their pension funds." (*Id.* ¶ 99.) Thus, other than allegedly having similar participants, Plaintiffs' "bank fraud" contention is not at all related to the other alleged RICO predicates, and cannot be used as evidence of a RICO pattern.

## 2. Plaintiffs Fail to Allege Mail/Wire Fraud.

Wire or mail fraud consists of the following elements: (1) formation of a scheme or artifice to defraud; (2) use of the U.S. mails or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986). Where a RICO claim involves fraud, the plaintiff must state the circumstances constituting fraud with particularity under Fed. R. Civ. P. 9(b). *Id.* To satisfy Rule 9(b), a complaint must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Cal. Pharm. Mgmt., LLC v. Zenith Ins. Co.*, 669 F. Supp. 2d 1152, 1159 (C.D. Cal. 2009). "In a case with multiple defendants, the plaintiff

19

must 'identify the role of each defendant in the alleged fraudulent scheme.'" *Id.* (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007)).  Moreover, "a plaintiff must set forth more than the neutral facts necessary to identify the transaction … [;] the plaintiff must set forth an explanation as to why the statement … was false or misleading." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by statute on other grounds*.

Plaintiffs claim that Defendants committed mail and wire fraud when:

(1)  Opus West "was mailing in its quarterly compliance reports by both regular mail and through the Internet (wires)";

(2)  "Defendants wired money into [Opus West]  . . . to fraudulently show they were in compliance with the loan covenants";

(3)  "Defendants wired the dividend distributions from [Opus West] to Opus Corporation";

(4)  "Opus West transferred funds to Opus Corp[.] for charitable contributions"; and

(5)  "Defendants . . . wired the dividends from Opus Corporation to the various Defendant trusts."  (Complaint ¶ 97, pp. 27-28.)

Plaintiffs have failed to meet Rule 9(b)'s standard as to each of these alleged predicate acts, and none can be considered for the purposes of establishing a RICO pattern. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010).

As to each of these five types of alleged predicate acts, Plaintiffs have not alleged the <u>role of each defendant</u> in the purportedly fraudulent scheme; they merely claim that "Defendants have committed Mail and Wire Fraud" and that "[a]ll of the aforesaid transfers were at the direction of Defendants."  (Complaint ¶ 97, pp. 27-28.)  Rule 9(b) "does not allow a complaint to merely lump multiple defendants together" as Plaintiffs have done. *Swartz*, 476 F.3d at 764; *Kennedy*, 2010 WL 1710006, at *5.  On this ground alone, Plaintiffs' mail/wire fraud allegations should be dismissed for failure to satisfy Rule 9(b). *See Kennar v. Kelly*, 2011 WL 2116997, at *6 (S.D. Cal. May 27, 2011).

As to Opus West's alleged mailing/wiring of fraudulent compliance reports ((1) above) and Defendants' wiring of dividends from Opus Corp. to Defendant trusts ((5) above), courts repeatedly hold allegations just like Plaintiffs' to be too general to satisfy Rule 9(b). *See, e.g., Sanford,* 625 F.3d at 558 ("[B]ecause the [plaintiffs] failed to allege any specific mailings, they once again failed to satisfy Rule 9(b)'s particularity requirement."). Plaintiffs do not specify whether the compliance reports were mailed or wired, who mailed or wired the reports, who received the reports, or when the reports were mailed/wired. Likewise, Plaintiffs do not identify who wired the dividends from Opus Corp. to the Defendant trusts or when such wirings allegedly occurred. Thus, these alleged predicate acts cannot provide evidence of a pattern of racketeering activity.

As to Defendants' alleged wiring of money into Opus West "to show they were in compliance with the loan covenants" ((2) above), in addition to failing to adequately allege the use of the wires,[11] Plaintiffs allege no facts to show that providing subordinated debt was fraudulent. As such, they have not alleged a scheme or artifice to defraud.

As to wiring of dividend distributions from Opus West to Opus Corp. ((3) above), Plaintiffs fail to allege how such transfers were fraudulent. (Complaint ¶ 97, p. 28.) Mere transfers of funds from a subsidiary to its parent company are not fraud. Moreover, Plaintiffs conspicuously do not allege that such distributions were unauthorized or that the specific distributed funds had been set aside for them. In fact, they admit that their compensation and deferred compensation plans were unfunded. (*Id.* ¶ 94.)

---

[11] On at least one occasion, Plaintiffs claim that "Opus Corp. made a 'Journal entry' loan to [Opus West]," but that "[n]o money changed hands." (Complaint ¶ 97, p. 26.) Thus, Plaintiffs acknowledge that there could not have been a wire transfer.

1

2      Likewise, as to Opus West's transfer of funds to Opus Corp. for charitable

3   contributions ((4) above), Plaintiffs do not allege how these transfers were

4   fraudulent.   Additionally, they do not allege specifically who was involved or

5   when Opus West transferred funds for charitable purposes, other than that they

6   "believe transfers were made in 2006" and that Opus West transferred funds "[i]n

7   2007." (*See id.* ¶ 97, p. 28.)  Such generalized allegations are insufficient to satisfy

8   Rule 9(b).

9      Because each of the alleged predicate acts of mail/wire fraud fails to satisfy

10   Rule 9(b), Plaintiffs have not alleged a pattern of racketeering activity based on

11   mail/wire fraud.

12          **3.     Plaintiffs Fail to Allege Embezzlement from a Benefit Plan.**

13      Plaintiffs' allegations relating to predicate acts for violations of 18 U.S.C. §

14   664 are similarly deficient.  Section 664 imposes liability on "[a]ny person who

15   embezzles, steals, or unlawfully and willfully abstracts or converts … assets of any

16   employee welfare benefit plan or employee pension benefit plan."  The statute

17   applies only to an employee benefit plan that is "subject to any provision of title I

18   of [ERISA]," 18 U.S.C. § 664, and criminal liability will attach only if the act is

19   accomplished with specific criminal intent.  *United States v. Andreen*, 628 F.2d

20   1236, 1241 (9th Cir. 1980).  The purpose of § 664 is to "preserve the <u>designated</u>

21   funds for those entitled to their benefits." *Id.* at 1242 (emphasis added).  The Ninth

22   Circuit has held that the terms "embezzles" and "converts" are to be given their

23   common-law meanings. *Id.* at 1241.  Thus, embezzlement involves "the fraudulent

24   appropriation of the property of another by one in lawful possession thereof." *Id.*

25   And conversion "encompasses the use of property, placed in one's custody for a

26   limited purpose, in an unauthorized manner or to an unauthorized extent." *Id.*

27      On its face, § 664 does not apply to Plaintiffs' claims.  Initially, to the extent

28   Plaintiffs' allegations relate to plans <u>not</u> governed by ERISA, such alleged

embezzlement could not constitute a RICO predicate act because § 664 applies only

22

to ERISA plans. *See Vierria v. Cal. Highway Patrol*, 644 F. Supp. 2d 1219, 1234-35 (E.D. Cal. 2009). Likewise, to the extent Plaintiffs' allegations relate to ERISA plans, the transfers from Opus West to Opus Corp. could not violate § 664 because these plans were underfunded, as Plaintiffs themselves acknowledge. (Complaint ¶ 94.) As such, § 664—which is intended to preserve "designated" funds—cannot have been violated. *Young v. W. Coast Indus. Relations Ass'n, Inc.*, 763 F. Supp. 64, 74 (D. Del. 1991) (dismissing portions of RICO claim alleging violation of § 664 relating to unpaid employer contributions to ERISA plan), *aff'd without opinion*, 961 F.2d 1570 (3d Cir. 1992); *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1274, 1280 (7th Cir. 1985).

Even if § 664 could apply here, Plaintiffs still have not sufficiently alleged the elements of embezzlement or conversion. They allege no facts indicating that Defendants' actions in transferring any funds were unauthorized. Rather, Plaintiffs merely conclude that "[w]hen Defendants transferred the funds out of Opus West, they also embezzled money, funds and credits belonging to Plaintiffs, in violation of [§ 664]." (Complaint ¶ 97, p. 28.) Such "[c]onclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto*, 139 F.3d at 699; *Molina v. Union Independiente Autentica de la AAA*, 555 F. Supp. 2d 284, 296 (D. P. R. 2008); *Eaves v. Designs for Finance, Inc.*, 2011 WL 1236173, at *21 (S.D.N.Y. March 30, 2011).

In sum, Plaintiffs cannot state a claim based on predicate acts that violate 18 U.S.C. § 664. Because Plaintiffs have not properly alleged any predicate acts of bank fraud, mail/wire fraud, or embezzlement of an employee benefit plan, they cannot allege a pattern of racketeering activity, and their RICO § 1962(c) claim should be dismissed.

## III.   PLAINTIFFS FAIL TO STATE A SECTION 1962(d) CLAIM.

Plaintiffs further allege that Defendants violated RICO's conspiracy section, 18 U.S.C. § 1962(d), which outlaws any conspiracy to violate any of the other

subsections of § 1962. Plaintiffs fail to state a claim for two reasons. First, Plaintiffs have not stated a claim under § 1962(c), and thus their conspiracy claim must also fail. *Sanford*, 625 F.3d at 559 (a plaintiff "cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO"). Second, Plaintiffs have not alleged facts that tend to show that each of the Defendants entered into an agreement to violate the RICO statute.

"A plaintiff must allege facts showing that the 'conspirator[s] … intend[ed] to further an endeavor which … would satisfy all of the elements of a substantive criminal offense.'" *Rocawear Licensing LLC v. Pacesetter Apparel Group*, 2007 WL 5289737, at *5 (C.D. Cal. Sept. 12, 2007) (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)). A defendant must also have been "aware of the essential nature and scope of the enterprise and intended to participate in it." *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993). In other words, a plaintiff must show that the defendants "objectively manifested their agreement to participate in a racketeering enterprise through the commission of two or more predicate crimes." *Avalos v. Baca*, 596 F.3d 583, 593 (9th Cir. 2010). While it is unnecessary for each conspirator to "know all of the details of the conspiracy, the evidence must show that the defendant 'knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise.'" *Rocawear*, 2007 WL 5289737, at *5 (quoting *U.S. v. Fernandez*, 388 F.3d 1199 (9th Cir. 2004)).

Like the complaint in *Baumer*, Plaintiffs' Complaint here is "bereft of any allegation of 'conspiracy' or 'agreement,'" "[n]or are facts pled sufficient to infer such an [agreement]." *Baumer*, 8 F.3d at 1346. Instead, Plaintiffs, in conclusory fashion, allege that "[f]rom 2006 through 2009, Defendants also entered into a conscious agreement to violate RICO and embezzle Plaintiffs' pension funds in violation of 18 U.S.C. § 1962(d)." (Complaint ¶ 100.) Even though the Complaint need not allege that each of the Defendants personally committed any predicate acts, it still must allege facts showing that each Defendant agreed that the purported

1  wire fraud and/or embezzlement of an employee benefit plan be carried out.

2  Plaintiffs here have made no such allegations.  Although they allege that the

3  transfers "were at the direction of" Defendants Rauenhorst, Bednarowski, and

4  Campa, this claim does not even come close to presenting facts tending to show

5  that Defendants explicitly or even tacitly agreed to commit wire fraud or

6  embezzlement from an employee benefit plan.  (*Id.* ¶ 36; ¶ 97, p. 28.)  It is simply

7  not enough to allege that Defendants agreed to transfer money from Opus West to

8  Opus Corp., because such action is not a criminal endeavor.

9  　　　　In summary, Plaintiffs' claims under the RICO Act are fatally defective.

10  They cannot be salvaged by any pleading amendment and, therefore, should be

11  dismissed in their entirety with prejudice.

## **CONCLUSION**

12  　　　　The defects in Plaintiffs' Complaint are not mere technical pleading issues.

13  Plaintiffs' state law claims for deferred compensation under the five Opus West

14  ERISA Plans (Counts I-III, V and VII) all fail as a matter of law because ERISA

15  preempts them. And Plaintiffs' RICO claim (Count IV) does not come close to

16  meeting the strict standards the courts have established to prevent the bringing of

17  unfounded RICO claims.  For all of these reasons, Defendants respectfully request

18  that the Court dismiss Plaintiffs' RICO claim and dismiss Plaintiffs' state law

19  claims to the extent they seek benefits under Opus West's ERISA Plans.

MEMO. OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS   Case No. 10-cv-4806 MMM (VBKx)

1

2

Dated: August 5, 2011                    Respectfully submitted,

3
                                         MORRISON & FOERSTER LLP
4

5                                        By:___s/David F. McDowell_____
                                              David F. McDowell
6
                                         and
7
                                         FAEGRE & BENSON LLP
8                                        John B. Gordon
                                         Dennis M. Ryan
9                                        W. T. Roberts, III (Trey)
                                         Edward T. Wahl
10                                       *Pro hac vice applications granted*

11                                       *Attorneys for Defendants*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO. OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS   Case No. 10-cv-4806 MMM (VBKx)